# JOHN WIXON v. THE BEAR RIVER AND AUBURN WATER AND MINING COMPANY.

APPEAL—ASSIGNMENT OF ERRORS.—A statement on appeal, or on motion for a new trial, should set forth distinctly the grounds upon which the party appealing intends to rely for a reversal of the judgment. The Supreme Court will not look into or regard any alledged error which is not clearly assigned in the transcript.

WATER DITCHES—GARDENS—PRIOR RIGHTS.—If a tract of land in the mineral region, bordering on a natural stream, is inclosed and appropriated for garden or orchard purposes, and the waters of the stream are afterwards appropriated for mining purposes at a point above the inclosed land, the water thus appropriated must be so used as not to materially injure the fruit trees or garden.

SAME.—One who appropriates for mining purposes the waters of a ravine or stream, upon the public lands in the mineral region, must take and use the same in such manner as not to injure or destroy orchards or gardens bordering on the stream, which have been inclosed and planted before the water was appropriated.

ORCHARDS—MINERAL REGION.—One who incloses a tract of public land in the mineral region, and plants the same with fruit trees, acquires a vested right which will be protected as against one subsequently entering upon the same for mining purposes.

APPEAL from the District Court, Eleventh Judicial District, Placer County.

This action was commenced May 26th, 1861. Plaintiff averred in his complaint that in 1854 he inclosed with a substantial fence a tract of land containing about two acres, across the road from his residence, and planted the same with peach and apple trees; and that since said year he had annually cultivated the same with vegetables and strawberries, for the use of his family. That defendant was the owner of a ditch conveying water from Bear River for mining purposes, and passing a short distance above plaintiff's field; that in 1856 defendant constructed a reservoir, about one half mile above plaintiff's orchard, across the same ravine on which the orchard bordered, into which defendant turned and accumulated the water flowing from the ditch; that the water flowing in defendant's ditch contained large quantities of mud and sediment, which settled in the reservoir; that since the summer of 1860, defendant had been in the habit once in each week of opening the gate of the reservoir, and allowing the water accumulated therein to rush out and carry with it the said mud and sedi-

ment, which water, mud, and sediment flowed over and upon the garden, and injured and destroyed the fruit and destroyed the vegetables; that a part of the fruit trees had already been destroyed, and if defendant was suffered to continue its said acts, the trees would be all destroyed, and the garden rendered unfit for cultivation.

The complaint prayed for judgment for damages and for a perpetual injunction.

The answer averred, that the land of plaintiff was public land, in the mineral region, and contained valuable mines of gold; and that it was situated along and across a ravine, a natural water course, and that for a long time defendant had been in the habit of using the ravine for the purpose of conveying the water of its ditch to mines below, to be used for mining; that the injury to plaintiff's garden, if any, had been caused by miners digging up the bed of the ravine above plaintiff's garden, and by obstructions placed in the ravine below the garden; that defendant was engaged in selling water to miners for mining purposes, and had a right to the use of the ravine as a channel for the conveyance of its water, etc.

The answer also denied all the material allegations of the complaint, except the fact that plaintiff had inclosed his garden and planted his fruit trees in 1854, and that defendant's reservoir was constructed in 1860.

The jury found a verdict for plaintiff for damages, and the Court decreed a perpetual injunction restraining defendant from allowing the water or mud or sediment from its reservoir to flow down upon plaintiff's garden so as to injure the same.

The following are the instructions given by the Court to the jury, to which defendant excepted:

" If the plaintiff was in the possession of his premises before the construction of the defendant's reservoir, then the defendant has no right to run out the water accumulating therein, carrying with it sand and sediment, on to the plaintiff's premises, and to his injury, and if defendant has done this, you will find for plaintiff.

" If the plaintiff possessed his premises prior to the appro-

priation of the water of the ravine by defendant, then the defendant's appropriation was subject to the prior rights of the plaintiff, and if this is so, then the defendant is liable for injuries resulting to the plaintiff's premises from its use of such water subsequently appropriated."

The following are the instructions asked by defendant and refused, to which refusal defendant excepted:

"If the jury find that defendant is a company for the purpose of supplying water to miners for mining purposes, and that the premises and ravine mentioned in this case are within the mining district of this State, then the defendant has the right to appropriate, by means of a reservoir or otherwise, the natural waters of Miners' Ravine, and also the right to the necessary means for such enjoyment.

"The plaintiff cannot by appropriation of land or otherwise prevent the free flow of water and tailings in a natural ravine situated in a mineral district; and any improvements created or erected in the channel of a ravine, must be subject to the right of miners upon the ravine, and also the right of defendant to a free enjoyment of its right, and a free and unmolested flow of water.

"All miners, and defendant as a company organized for mining purposes, have the right to the free use and benefit of natural water courses and reservoirs, and plaintiff has no right to interfere in any manner with such right, and if by reason of plaintiff's interference with the free use of the reservoir he has suffered injury, defendant is not responsible.

"The right to use and enjoy the ravine and its privileges carries with it the right to such privileges as are necessary to the enjoyment of the right."

The following are the only grounds of appeal set forth in the statement:

"Defendant's grounds of appeal are as follows:

"The Court erred in giving the instructions to the jury which were excepted to by defendant, and also erred in refusing to give the instructions requested by defendant, by reason

47

of which the jury were induced to render a verdict contrary to law and contrary to the evidence."

*A. S. Higgins*, for Appellant.

The two instructions with respect to the rights of the parties by reason of the times of their location, are clearly erroneous.

Such a doctrine, if sustained, would result in the greatest injury to the mining interests of the State, and one person may, simply by *prior location* in a ravine, so fill up and obstruct the same as to prevent any mining operations above, even in the richest mineral districts; because it might, and probably would, result in flowing water, tailings, and sediments, around and upon his premises.

In granting to the people of the State the right to mine, the Legislature and laws of the State grant the right to the enjoyment of *such privileges as are necessary to the enjoyment of the right;* and the seventh instruction and other instructions asked by defendant and refused, relating to the subject matter of the seventh, should have been given to the jury, and the Court erred in refusing them. (*Clark* v. *Duval*, 15 Cal. 88 ; *Tartar* v. *Spring Creek W. & M. Company*, 5 Cal. 398.)

A license to work the mines implies a permission to extract and remove the mineral. (*Boggs* v. *Merced Mining Company*, 14 Cal. 374.)

It is not necessary to multiply authorities upon the question so often settled by this Court, that miners, and this appellant and company organized for mining purposes, *have* the right to enter upon mineral lands for the purpose of extracting gold therefrom, and also to appropriate and use the water of ravines and natural water courses for mining purposes; and such a right would be barren and of no avail, if any person may so obstruct and destroy the means of enjoying the right as to render its enjoyment absolutely impossible.

If, therefore, one desires to appropriate the bed of a ravine, and divert or obstruct the channel, he must leave or construct

such channel or outlet as will be sufficient for the purpose of the rain, and such as to allow the water to flow off. *And the Court erred in refusing to give to the jury the instructions asked upon this point.* (*The Bear River and Auburn W. & M. Co.* v. *York Mining Co.,* 8 Cal. 333.)

*S. Heydenfeldt,* also for Appellant.

The first instruction at request of defendant, which was refused by the Court, ought to have been given.

The simple right of appropriation has been recognized in many previous decisions. (*Stoakes* v. *Barrett,* 5 Cal. 39 ; *Irwin* v. *Phillips,* 5 Cal. 143 ; *Conger* v. *Weaver,* 6 Cal. 556.)

So with the second instruction refused.

A ravine is one of the natural drains of the earth's land surface, and should no more be obstructed from the purposes of its natural creation than the bed of a river.

*Tuttle & Hillyer,* for Respondent.

It is defendant, and not plaintiff, who has impeded the channel of the ravine.

Had the water been allowed its natural flow every day in the week, plaintiff would have sustained no injury, and this action would not have been brought.

If we use defendant's own argument, it would abate his reservoir as a nuisance, and compel him to construct it in some place where he would not entirely stop the flow of water down the ravine.

He has constructed a high wall entirely across a natural channel.

Besides, the argument, if good for anything, proves too much. The argument, as here made by defendant, would allow this corporation to build its reservoir anywhere.

They might go immediately above the residence of a family, and in a short time cover up or destroy the house; yet, defendant would say, as do its counsel here, that the house was but of *little value,* and miners had a right to mine on pub-

lic lands; that the right to mine carried with it all the incidents necessary; that defendant was the sole judge of what those incidents were—and, therefore, family residences, gardens, orchards, etc., were all held and occupied at defendant's mercy.

Defendant's instructions, which were asked and refused, in the first place had no application to the case in point; and second, as abstract propositions of law are incorrect.

The instructions given are fully as favorable to defendant as the circumstances warrant. (See *Smith* v. *Doe*, 15 Cal. 100; *Gillan* v. *Hutchinson*, 16 Cal. 153; *Burdge* v. *Underwood*, 6 Cal. 45; *Clark* v. *Duval*, 15 Cal. 185; *Esmond* v. *Chew*, 15 Cal. 142.)

By the Court, SANDERSON, C. J.

We cannot notice the argument of counsel for appellant as to the sufficiency of the evidence to sustain the verdict, nor as to the question of costs, nor the correctness of the decree for an injunction, because they are not embraced in the grounds of appeal set forth in the statement. (*Barrett et al.* v *Tewksbury and Wife*, 15 Cal. 354; *Reynolds* v. *Lawrence*, 15 Cal. 359.) Under the rule laid down in those cases, we can only consider the points made upon the instructions given and refused by the Court.

Nor do we deem it necessary to notice in detail the instructions of which the appellant complains. It is sufficient to say, that after a careful examination we are satisfied they correctly present the law applicable to the facts, and to the legal effect of which they are addressed.

As to the instructions asked for by the defendants: The first was properly refused, because it is so broad and unqualified in its terms that it might have misled the jury. As an abstract proposition, even, it is too general, because it ignores entirely the idea of prior vested rights in others, to which the right claimed by defendant might be subordinate; and, as applicable to the particular facts of this case, it ignores entirely the prior rights of the plaintiff, and by necessary

implication negatives the idea that he had any such rights; thus striking from under it the very foundation upon which his cause of action rested, although such rights were conclusively established by the testimony.

The second instruction is undoubtedly law, but it had already been twice given in substance, and that was doubtless the reason why it was refused.

The four remaining instructions refused by the Court are founded upon the theory that, in the mineral districts of this State, the rights of miners and persons owning ditches constructed for mining purposes are paramount to all other rights and interests of a different character, regardless of the time or mode of their acquisition; thus annihilating the doctrine of priority in all cases where the contest is between a miner or ditch owner and one who claims the exercise of any other kind of right or the ownership of any other kind of interest. To such a doctrine we are unable to subscribe, nor do we think it clothed with a plausibility sufficient to justify us in combating it.

The judgment is affirmed.