E. MOORE AND L. E. YATES *v.* GEORGE L. MURDOCK AND H. B. POST.

APPEAL FROM ORDER DENYING NEW TRIAL.—On an appeal from an order denying a new trial, no objection or exception will be examined except such as are included in the appellant's statement of points on which he intends to rely.

DECISION OF APPELLATE COURT WHEN NEW TRIAL GRANTED.—On an appeal from an order granting a new trial because the verdict is not sustained by the evidence, the decision of the appellate Court affirming the order on the ground that the granting of a new trial in such cases rests in the sound discretion of the Court, does not settle the law of the case upon the evidence, that defendant is entitled, on the new trial, to a nonsuit, when plaintiff has closed his case.

MATTER OF EVIDENCE IN PLEADINGS NOT ISSUABLE FACTS.—Allegations of matters of evidence in a pleading are not issuable facts. If the answer puts in issue the ultimate facts resulting from the evidence, it is a sufficient denial.

MORTGAGE OF PERSONAL PROPERTY.—A sale of personal property made to secure an indebtedness of the vendor to the vendee, makes the transaction a mortgage.

TRIAL BY COURT—FINDINGS OF FACT.—An appellate Court will not set aside the findings and grant a new trial on the ground that the findings are not warranted by the evidence, unless the evidence was such, that if the questions had been submitted to a jury, the Court would set aside the verdict as contrary to evidence.

DEMAND WHEN NECESSARY BEFORE SUIT.—If a Sheriff seizes the property of A., then in A.'s possession, as the property of B., under an execution against the

property of B., a demand of the return of the property by A. is not necessary before bringing suit for damages.

CONTRACTS MADE ON SUNDAY. — Contracts made in this State on Sunday are not void because made on Sunday.

MORTGAGE OF PERSONAL PROPERTY. — The mortgagee of chattels who takes the same into his possession, holds the legal title, and an officer having an attachment against the property of the mortgagor is not authorized to take the mortgaged property out of the possession of the mortgagee.

ADMISSION BY COUNSEL IN BRIEFS. — If the respondent is entitled to a judgment for some amount, and recovers judgment for the whole amount sued for, and appellant insists in his brief that the respondent must recover the whole amount sued for or nothing, the Court will not decide whether the judgment was entered for a proper sum.

APPEAL from the District Court, Thirteenth Judicial District, Stanislaus County.

Plaintiffs brought their action to recover damages for the alleged wrongful taking and conversion of sixteen hundred sheep, and asked for judgment for five thousand dollars.

The answer, after denying the allegation of the complaint, set up that defendant Post was a creditor of one Hugh Forsman in the sum of two thousand four hundred dollars, and that on the 2d day of February, 1861, he commenced an action against Forsman in the District Court, San Joaquin County, and procured the issue of a writ of attachment directed to the Sheriff of Stanislaus County, and that the plaintiffs, who resided in Stockton, knew of said facts and left Stockton the same day at five o'clock, P. M., and went to the residence of Forsman, in Calaveras County, and that on the next day, Sunday, there was a pretended sale of the sheep by Forsman to plaintiffs for the pretended consideration of two thousand dollars, but no actual delivery, and that the sale was made for the express purpose of hindering and delaying the creditors of Forsman. The answer also alleged that defendant Murdock took possession of the sheep by virtue of the writ of attachment. The answer further averred that at the time of the sale by Forsman no money was paid, and that Forsman was not indebted to plaintiffs, and that the same persons who were in charge of the sheep prior to the sale remained in charge of them afterwards until the attachment was levied.

The suit was commenced in February, 1861, and plaintiffs in their replication to the answer denied that the sale was pretended or fraudulent, and alleged that it was made in good faith and for a valuable consideration, and that the sheep were actually delivered to them. The replication did not deny the averments in the answer about the plaintiffs going to Calaveras County to see Forsman, and keeping the persons in charge of the sheep after the purchase who had charge of them before, and that they went with Forsman from Calaveras County to Stanislaus County on Sunday and made the purchase.

The case was tried by the Court without a jury. The Court filed its findings of fact and conclusions of law. Judgment was rendered for plaintiffs for five thousand dollars damages and legal interest on that sum from the time of the conversion.

Defendants moved for a new trial, and made a statement embodying all the evidence, objections, and exceptions to the rulings of the Court during the progress of the trial. There were many objections made and exceptions taken during the trial, but the statement concluded with the following:

" The defendants will rely upon the argument of this case upon motion for a new trial upon the following : 1st—The Court erred in denying defendants' motion for a nonsuit at the close of plaintiffs' case; 2d—The conclusions of law drawn by the Court are not warranted by the facts found."

The Court denied a new trial, and defendants appealed from the order denying a new trial and from the judgment. The following are the facts found by the Court:

1st. That on the third day of February, 1861, the plaintiffs were the securities of one Hugh Forsman in a joint note made by said Forsman and the plaintiffs in November, 1860, to one W. N. Ryer, for the sum of two thousand dollars, bearing interest at the rate of two per cent per month, and payable twelve months after date ; which note was—February 4th—taken up by plaintiffs, by their own note to Ryer for two thousand one hundred dollars, or thereabouts, bearing two per

cent per month, which was subsequently paid by the plaintiffs at maturity.

2d. That the consideration of said note was the sum of two thousand dollars, loaned by Ryer to Forsman.

3d. That on said third day of February, the said Forsman was in failing circumstances, and attachments had been or were about to be issued against his property by sundry creditors.

4th. That said Forsman resided at that time in the County of Calaveras, and was engaged in the quartz mill business, and the business, also, of dealing in sheep.

5th. That he owned at that time a band of sheep, about eleven or twelve hundred in number, exclusive of lambs; which sheep were then kept in the care of Collins and Franklin, his herders, on a sheep range upon the open public lands, about nine miles distant from the said Forsman's mill and residence.

6th. That at said range there was a small cabin occupied by the herders, and a corral wherein the sheep were penned during nights.

7th. That these improvements were upon land claimed by one Robert Moore, who had constructed them for his own personal use.

8th. That on said third day of February, the plaintiffs applied to Forsman to secure them as his securities on said Ryer's note, and Forsman then agreed to turn out to them, for that purpose, the said flock of sheep, and made to the plaintiffs a written transfer of said property, of which the following is a copy:

"This is to certify, that I have sold to E. Moore and L. E. Yates twelve hundred head of sheep, and possession given, for the sum of two thousand one hundred dollars, paid by their assuming note that I owe Wm. M. Ryer for said amount, they being securities on said note; this sale being made to secure the payment of said note.

"HUGH FORSMAN."

9th. That the plaintiffs and Forsman, on said third of February, went together to where the sheep were kept and found them in the corral, and Forsman then directed his herders to turn the sheep out to the plaintiffs, which was done; Forsman declaring, at same time, that he thereby delivered to plaintiffs the possession of said sheep.

10th. That plaintiffs then, and as the sheep were then being delivered, employed said herders to take the care and charge of said sheep for and on account of the plaintiffs, with whom they agreed for future wages; the said Forsman having first discharged the said herders from his employ.

11th. That plaintiffs, immediately thereafter, supplied said herders with the necessary groceries and provisions, and continued to occupy and use the cabin and corral for their sheep and herders, (until the seizure hereinafter mentioned,) with the knowledge and without objection from the said Robert Moore, who had the possessory claim thereto.

12th. That the plaintiffs, after the sheep were so turned out to them, remained with the sheep on the range until noon on the said third of February, at which time the plaintiffs returned to Stockton, about twenty-three miles distant, where they resided and were engaged in business.

13th. That one of the purposes of their return was to procure supplies for their herders, of which they stood in urgent need.

14th. That on Monday, the fourth of February, 1861, at Stockton, service of sundry attachments against property for debts was made upon the plaintiffs by divers creditors of said Forsman, with notices on the backs thereof that all moneys or property in plaintiffs' hands belonging to said Forsman were attached by virtue of said writs; to each of which said garnishments defendants answered that they had no funds in their hands belonging to said Forsman.

15th. That on said Monday evening they went back to a point near said sheep, where the plaintiffs passed the night, going on the morning of Tuesday to the sheep range where the sheep were.

16th. That on said Tuesday, and whilst the plaintiffs and said herders were out upon the range, not far from the cabin and corral, one Hassinger, a Deputy Sheriff of the Sheriff and defendant, "Murdock," came to where the said parties, the plaintiffs, were standing near the sheep, and made known to plaintiffs that he had in his hands an attachment for debt, at the suit of the defendant, "Post," against the property of said Forsman, and that he had been informed that the sheep then and there were the property of Forsman.

17th. That the plaintiffs then and there informed said Hassinger that said sheep were not the property of Forsman, but that they were the property of the plaintiffs, and that they had bought them from Forsman, had paid for them, and had them in their (the plaintiffs') possession.

18th. That said Hassinger then declined to levy said attachment, declaring that he could not, unless the defendant, Post, gave the Sheriff a bond of indemnity; and that this bond was afterwards, at Stockton, given to Hassinger by or through the attorney of said Post, on Hassinger's demand.

19th. That thereafter said defendant, Murdock, by his said deputy, viz: on Wednesday, the 6th day of February, levied upon said sheep, seized and took them into his possession, and subsequently sold the same, under an execution upon a judgment recovered in the suit of the defendant, Post, against the said Forsman.

20th. That at the time of the transfer of said sheep, they were nearly all greatly and injuriously diseased with a disease known as the "scab," and at the same time the ewes were rapidly lambing.

21st. That in the then condition of the sheep, they could not have been removed from their range without much risk of loss and damage, especially by reason of the necessary separation, in case of removal, of the very young lambs from the ewes.

22d. That other herders could not have been employed in the immediate region of the sheep range, and the nearest probable places of getting them were Knight's Ferry, on the

Stanislaus River, and the City of Stockton, both about twenty-three miles distant.

23d. That there was no other sheep range near the range in question, where could be had the necessary shelters of cabin and corral, for herders and animals.

24th. That the plaintiffs, after the transfer to them, and before the defendants' levy, applied to one C. D. Reynolds, engaged in the sheep business, about one and a half or two miles distant from the range in question, to oversee the plaintiffs' herders in plaintiffs' absence; but in consequence of the diseased condition of the sheep, said Reynolds would not receive them at his place to be brought in contact with his own herd.

25th. That the defendant, Murdock, after his levy, continued the same herders in his employ for twelve or fifteen days, when said defendant delivered up said property, at Post's request, to said Post. That said defendants kept said sheep on the same range until the month of April, 1861, when they were removed, after the sale thereof.

26th. That the value of said sheep, at the time of said seizure, was the sum of five thousand dollars, being the same which is alleged in the complaint, and which the answer does not deny.

*Tyler & Cobb*, for Appellants.

There was no such delivery and change of possession as to take this case out of the Statute of Frauds. The delivery was not *actual*, but only *constructive;* and there was only a *constructive* and not an *actual* change of possession. (*Vance* v. *Boynton*, 8 Cal. 561; *Hurlburt* v. *Bogardus*, 10 Cal. 519; *Paige* v. *O'Neal*, 12 Cal. 495; *Stevens* v. *Irwin*, 15 Cal. 504.)

The sale was absolute in form, but was really intended as a mortgage to secure the payment of the sum of two thousand one hundred dollars, for which plaintiffs were contingently liable only, while the property, as shown by plaintiffs' evidence, was worth five thousand six hundred dollars, and there

was a secret understanding between plaintiffs and Forsman that plaintiffs should hold the balance for Forsman's benefit. (*Chenery* v. *Palmer*, 6 Cal. 122.)

The sale was made to hinder, delay or defraud the creditors of Forsman. At the time of such sale Forsman was insolvent, and known to be so by plaintiffs; and plaintiffs and Forsman knew that defendant, Post, and others, had sued out attachments against the property of Forsman. The buying of five thousand six hundred dollars worth of property of the insolvent debtor under such circumstances, for two thousand one hundred dollars, which, as plaintiffs were only *contingently* liable, they *might*, or might *not* have to pay, was, *as matter of law*, a fraud upon the creditors of Forsman.

The plaintiffs had shown no demand of the Sheriff and refusal on his part to deliver, after the property was attached by him, and before the bringing of this suit. (*Taylor* v. *Seymour*, 6 Cal. 514; *Daumiel* v. *Gorham*, 6 Cal. 44; *Killey* v. *Scannell*, 12 Cal. 75.)

The sale and delivery being upon Sunday, was void by the statutes of this State. (Statutes 1858, p. 124; *Lyon* v. *Armstrong*, 6 Vt. 219; *Robeson* v. *French*, 12 Met. 24; *Gregg* v. *Wyman*, 4 Cush. 322; *Patten* v. *Greely*, 13 Met. 284; *Wight* v. *Geer*, 1 Root, 474; *Northrup* v. *Foot*, 14 Wend. 248.)

Admitting, for the sake of argument, that the sale was made in good faith, and that the delivery and change of possession were actual and continued, then we say the plaintiffs ought not to recover, because plaintiffs held the sheep to secure the payment of two thousand one hundred dollars; and, by plaintiffs' own showing, the property in their hands was worth five thousand six hundred dollars, and when on Monday after the sale, defendant Post garnisheed them, they answered " that they had nothing in their hands belonging to Forsman." Whereas, in truth and fact, they *had* property at that time belonging to him, in their hands, to the value of three thousand three hundred dollars; and if they had answered the truth, defendant Post could have secured the payment of his whole debt.

By bringing this suit in its present shape, plaintiffs must recover the whole sum sued for, or nothing.

*John B. Hall*, for Respondents.

The point " that the sale and delivery being upon Sunday, was void by the statutes of this State," is without force.

The Act is penal and must have a strict construction, and neither expressly nor by fair implication does it embrace these parties and this transaction.

It is plain that the first clause of section two of the Act was intended to describe certain classes of persons, and to pro-hibit the *"keeping open"* of their business houses, for business purposes on Sunday; and the second clause (whereon the point must rest) was designed to operate as a more specific prohibition against *"selling* or *offering for sale,"*—but yet directed against the same business classes only—these being merchants, bankers, manufacturers, etc.

It is against the prosecution of a *regular* business, that the statute was directed ; and the business of *milling quartz*, and the mill, were the business and the place of business which the law would affect, and not dealing in sheep, especially when the act complained of is out of the usual course of such dealing.

The transaction was not an absolute sale, but a *mortgage or pledge of the property*, as appears by all the evidence, written and oral, and as the Court finds.

There is no evidence in the record to support an allegation of fraud, whether in the form of an understanding to cover up a possible difference between the value and the debt, for Forsman's benefit, or to practice a fraud by other means on creditors. .

The expectations of Forsman, without Moore's knowledge, could not charge the latter ; but neither the expectations of the one, nor the promises of the other, gave any direction to the surplus (if any) other than that commanded by the law— that is to say, *creditors to get it.* No attempt has been made

by the plaintiffs to conceal or evade this obligation. (*Wellington* v. *Sedgwick*, 12 Cal. 474.)

Forsman's insolvency, outstanding attachments with plaintiffs' knowledge, 'the exclusion of other creditors by means of the preference given to plaintiffs, will not, singly or combined, defeat the indemnity secured by their vigilance and activity. (12 Peters, 178, 200 ; *Dana* v. *Stanford,* 10 Cal. —— ; *Wheaton* v. *Neville*, 19 Cal. 41.)

No demand before suit was necessary, because the property was seized when in *plaintiffs' possession, and with notice to the defendants of such possession and title.* (*Ledley* v. *Hays*, —— 158 ; *Scriber* v. *Maston*, 11 Cal. 303, 306 ; *Paige* v. *O'Neal*, 12 Cal. 495 ; *Sargent* v. *Sturm*, —— Cal. ——.)

Elsewhere, that actual possession is shown upon the proofs; *but by the pleadings alone is the fact established,* for the answer does not make an issue on that point.

Under point four of appellants, it is claimed that the Court should have granted yet another trial to the defendants, because the sheep being held to secure the Ryer debt, with interest, (which, it may be observed here, amounts now to about the sum of three thousand eight hundred dollars,) stated at two thousand one hundred dollars, they answered untruly when answering " no funds in their hands," for they had (say counsel) to the value of three thousand three hundred dollars, that sum being the difference between the debt and interest and the real value.

Accepting the *voluntary sworn statement* as to the value by the defendants, the estimate is correct.

The answer did not prevent the garnishment, for that was completed, and whether true or false, did not in the least degree impair the legal effect of that proceeding. If there were funds or property, they became bound without regard to the garnishee's return. (*Roberts* v. *Landecker*, 9 Cal. 262.)

By the Court, RHODES, J.

The only point we can consider, is the alleged error of the Court below in overruling the appellant's motion for a nonsuit. The other grounds of the motion for a new trial, were not specified, either as regards the insufficiency of the evidence or the errors in law, as is required by the statute (Acts of 1863, p. 643), and therefore they should be disregarded by the Court below, and cannot be examined on appeal. (*Wixon* v. *Bear River & A. W. M. Co.* 24 Cal. 367 ; *Walls* v. *Preston*, 25 Cal. 59 ; *Hutton* v. *Reed*, 25 Cal. 478.)

The appellants insist that the law of this case was settled upon the previous appeal, but in this they are mistaken. The appeal was from an order granting the defendants' motion for a new trial, and the Supreme Court say : " It seems that it was granted on the ground that the verdict was not sustained by the evidence. The granting of new trials, for such reasons, rests on the sound discretion of the Court, and we see no gross abuse of that discretion in the present case. The order is therefore affirmed." Such language is quite inappropriate to express the opinion that a nonsuit should have been granted.

The point that " upon the pleadings themselves the defendants were entitled to a nonsuit" (meaning probably a judgment) is not well taken. The allegation of new matter in the answer, respecting the possession and pretended sale of the sheep—the property in controversy—the place where they were, and the persons who had charge of them are mere matters of evidence, from which the ultimate and issuable fact of the ownership of the sheep, by Forsman, at the time of the service of the attachment might be inferred ; but treating them as amounting in the aggregate to such ultimate fact, the allegations of the replication that the sale was made to the plaintiffs in good faith and for a valuable consideration, and that the possession was delivered to them before the levying of the attachment, sufficiently put the alleged facts in issue.

The transaction between the respondents and Forsman

amounted, as was properly found by the Court below, to a mortgage of the sheep by Forsman to the respondents, to secure them for the payment of the amount which they agreed to pay and did pay to Ryer on the note formerly given to him by Forsman, with the respondents as his sureties. The instrument as set out in the findings concludes with the recital, " this sale being made to secure the payment of said note." Under the issues, it was necessary for the respondents to introduce evidence to prove the execution and consideration of the mortgage, the delivery of the possession of the sheep, and the actual and continued possession thereof by the mortgagees, prior to the levying of the attachment by the appellants. The evidence offered was such that the Court was justified in finding the execution of the mortgage for a valuable consideration, and in holding that there had been such an immediate delivery, and actual and continued change of possession of the property in controversy, as would satisfy the Statute of Frauds. The question as to whether the sale was made to hinder, delay or defraud the creditors of Forsman, whether the respondents had notice of the fraudulent intent, and whether there was a secret trust for the benefit of Forsman, created by the parties to the mortgage at the time of its execution, are questions of fact, and this Court will not disturb the action of the Court below and direct a nonsuit to be entered, unless the evidence was such that if those questions had been submitted to a jury and the jury had found for respondents, the Court would set aside the verdict as contrary to the evidence. (*Mateer* v. *Brown*, 1 Cal. 222 ; *Rudd* v. *Davis*, 3 Hill, 287 ; *Stuart* v. *Simpson*, 1 Wend. 376 ; *Demper* v. *Souizer*, 6 Wend. 436 ; *Wilson* v. *Williams*, 14 Wend. 146 ; *Fort* v. *Collins*, 21 Wend. 109 ; *Jansen* v. *Acker*, 23 Wend. 480.) Under that rule, and in view of the evidence in the cause, we would not be justified in ordering a nonsuit.

A demand of the property was not required to be made by the respondents before bringing suit, because at the time of its seizure by the Sheriff under the attachment the respondents were in possession and the demand would not give the officer

any greater or other notice than was imparted by the possession of the respondents.

It is thought that the sale is void because made on Sunday. It is a sufficient answer to say that the statute of 1861 was not designed to prohibit the making of contracts, but the keeping open of a house or place of business on Sunday; that the statute has not prescribed as a penalty for a violation of the Act, that the contract made on Sunday shall, be void; and that this ground was not taken in the Court below on the motion for a nonsuit.

The appellants insist that the respondents, by denying to the Deputy Sheriff, who was about to levy the attachment upon the sheep, that Forsman owned them, and claiming that they had bought them and were in possession of them, misled the appellants, inducing them to believe that Forsman had no interest in the sheep. We think this point is not included in any of the grounds of the motion for the nonsuit. But if it is included in those grounds, the point cannot assist the appellants in this action, for whether the instrument executed by Forsman to the respondents was a bill of sale or a mortgage, the respondents were entitled to the possession under the contract. The mortgagee of chattels holds the legal title of the mortgaged property (2 Hilliard on Mort. 277, 426; *Hackett* v. *Manlove*, 14 Cal. 89), and the officer holding an attachment against the property of the mortgagor, is not authorized to take the property out of the possession of the mortgagee. The suppression of the fact that the transaction amounted to a mortgage, if it prevented the officer in any manner from acting, simply induced him not to do what he had no right to do —that is, to take possession of the sheep. It will be observed that the respondents had been served with a garnishment process by the judgment creditor, and if they answered untruly the law furnishes a remedy.

Judgment was entered for the value of the sheep, and that sum exceeded the amount of the principal and interest of the debt intended to be secured by the mortgage; but we are not called on to determine whether the judgment was entered for

the proper sum, for the appellants contend that the respondents, by bringing their suit in the present form, must recover the whole sum sued for—the value of the sheep—or nothing.

Judgment affirmed.

Mr. Justice SAWYER expressed no opinion.