JAMES C. WHITEHILL, Respondent, *v.* F. J. SHICKLE and E.
RANDALL, Appellants.

1. *Contract, action on—Omission of stamp, effect of under acts of Congress,
   where evidence showed no intention to evade provisions of the acts.*—Where
   defendant, in his answer to an action on a contract which was unstamped at
   the commencement of the suit, admitted the execution of the instrument
   without alluding to its legality under the stamp acts: *held,* that he thereby
   admitted its validity, and, *semble,* that he could not raise that issue afterward;
   and *held,* also, that even if he raised the question by the pleading, it was com-
   petent to show that the omission was not made "with intent to evade the pro-
   visions of the act" of Congress requiring the stamp.
2. *Contract agreeing upon no mutuality of losses, not a partnership.*—Where a
   contract contained an express provision to indemnify one of the parties for all
   loss of capital advanced by him in the business during the first four months,
   and to pay him for the value of his services during that time, in case he
   should then leave, with the proviso only that he should, at the end of that
   time, make a correct exhibit of the business; and the contract further stipulated
   that thereafter, if the business continued, there should be a mutual share of
   the profits and losses: *held,* that up to the expiration of the first four months
   no partnership existed under the contract.
3. *Contract—Partnership, mutuality of losses necessary to.*—To constitute a
   partnership between the parties themselves, there must be a communion of
   profits between them. A communion of profits implies a communion of losses.

Neither reason nor authority seems to favor the rule that there may be a legal and valid partnership although one or more of the partners are guaranteed by the others against loss.

4. \ *Contract — Partnership — Covenant, action on may be had in law.* — Even where a party to a contract was held to be a partner by the terms of the contract, yet, if it contained an express covenant to pay him his losses, or the amount of his advances less his receipts, at the end of a specified time, an action at law on the covenant may properly be resorted to, and a bill in equity calling for a settlement of partnership accounts is unnecessary.

5. *Contracts — Averments — Penalty — Assignment of breaches.* — A general statement that a party "totally disregarded all, and did not fulfill any, of the covenants and stipulations to be kept and performed, and made by him," etc., is too general to support a demand at law, especially for a penalty. In claiming a penalty, specific breaches must be assigned.

## *Appeal from St. Louis Circuit Court.*

This suit was an action at law brought by plaintiff on certain articles of agreement concerning the manufacture of "Magic Filters," signed by plaintiff and defendants, and which provided, among other agreements, the following: "The parties of the first part" (Randall & Shickle) "agree with the party of the second part" (Whitehill) "to give, and do hereby give him, one-third of the net profits arising from the sale of said filters, and from the sale of all patent rights wherever the same may be introduced, on the following conditions, to-wit: The said party of the second part is to devote his time and attention to the management and conducting of the business pertaining to the manufacture and sale of the various styles of the filters, and furnish the necessary capital and funds to defray all the expenses incurred in patenting, manufacturing, advertising, and selling of the filters as aforesaid, until the proceeds arising from the profits of the filters shall be sufficient to meet all expenses. The said party of the second part agrees to keep a correct account of all moneys received and expended by him in the business, which account shall be kept in books which are to be opened for the inspection of the said parties of the first part whenever required by either of them; and said party of the second part shall, whenever required by the parties of the first part, or either of them (but not oftener than once in each month), make out a correct and full statement of the receipts and expenditures in the

Whitehill v. Shickle et al.

said business, and shall, after repaying to himself the amount of capital advanced by him in the commencement of the business, pay over to the said parties of the first part, in equal amounts, the net proceeds of said sales and profits, after deducting one-third of the same for his own interest as before stated, which amount shall be received as a full equivalent for his services as aforesaid; and if he fails or refuses to do and perform the same as aforesaid, he is to forfeit and pay to said parties of the first part five thousand dollars, and also forfeit all his interest in the 'Magic Filter,' and all rights and interest under this contract. * *. * The said parties of the first part hereby agree to indemnify the said party of the second part against any loss which may occur in the said business, for the period of four months from the above date, and no longer, at the expiration of which time the said party of the second part shall make a full, correct, and entire exhibit of the receipts and expenditures, and all matters pertaining to the said business; and said parties of the first part hereby agree to pay to the said party of the second part any loss, in part or whole as aforesaid, should any occur, of the capital advanced by said party of the second part in conducting said business; the said business to be conducted on the cash system, and, until otherwise agreed upon, the said business shall be conducted and carried on under the name of J. C. Whitehill. It is further covenanted and agreed, by and between said parties as aforesaid, that if the said party of the second part shall faithfully keep and perform the covenants and agreements and conditions herein contained, then the said parties of the first part will assign, on or before the 20th day of April, 1867, to said party of the second part, one-third of the patent of said 'Magic Filter,' if one shall be issued."

The petition closed with the usual prayer for judgment, without asking for any account or other equitable relief. Defendants, in their answer, admitted the execution of the articles of agreement, but denied generally the allegations of plaintiff's petition, and alleged divers violations of his covenant by plaintiff. The case was referred to T. A. Post, referee, to try the issues; and, on hearing of the cause, the contract was objected to as being unstamped at the time of its execution, which omission was admitted by

plaintiff. At the outset, moreover, all testimony was objected to as irrelevant, on the ground that the contract was in effect a partnership agreement; that, in the premises, an action at law was improper; that the only remedy was a bill in equity praying a dissolution of partnership and an account showing the profits and losses of the concern. Both objections were overruled. The case proceeded. Exceptions to the report of the referee were duly filed, and overruled by the Circuit Court, and the case comes here by appeal.

A further statement of the case will be found in the opinion of the court.

*Ladue, Birge & Thayer*, for appellants.

I. The referee below erred in admitting the contract in evidence and in allowing suit to be maintained upon what was acknowledged to be a void instrument. (U. S. Laws 1863–4, pp. 293, 295, §§ 153, 163 ; Act of March 3, 1865, U. S. Laws 1864, pp. 69, 70.)

II. (*a*) As a proceeding in the nature of a bill in equity for an account and dissolution of the partnership, the petition was manifestly defective. No such relief is demanded, nor does it state facts entitling plaintiff to such relief. This defect has not been waived by subsequent proceedings. ( Maguire v. Vice, 20 Mo. 431 ; Richardson v. Means, 22 Mo. 497 ; Morin v. Martin, 25 Mo. 362 ; Meyer v. Field, 37 Mo. 434, 442 ; Mooney v. Kennett, 19 Mo. 551, and 18 Mo. 143–4 ; Hathaway v. Foy, 40 Mo. 540.) (*b*) An action at law could not formerly have been maintained in a case like the present. The rule requiring partners to enforce their rights against each other in equity has only three enumerated exceptions, but the present case falls under neither. It is true the action is brought on an express covenant entered into by appellants, as urged by the referee ; but whether there had been any breach of the covenant required an investigation of the entire partnership transactions—in other words, the taking of an account to ascertain if there had been any loss in the business. (Collier on Partnership, where the exceptions to the rule are enumerated and the case collated, ch. 3, § 2, ¶¶ 270,

Whitehill v. Shickle et al.

272, 276, and ch. 1, p. 13, ¶ 18.) (c) The finding of the referee, that the parties to this action were not copartners, is directly opposed to the decisions of this court in many similar cases. (37 Mo. 439.) It was also immaterial in answer to the objection raised by appellants, the fact of a copartnership having been admitted by the pleadings.

*Krum, Decker & Krum*, for respondent.

I. The referee properly admitted the contract sued on. (*a*) Its execution was admitted by the appellants in their pleadings. (*b*) The answer did not set up the defense that the contract was void for want of a stamp. (Gen. Stat. 1865, pp. 659, 660; Nellis v. Clark, 4 Hill, 424, 430; Pepper v. Haight, 20 Barb. 429, 435; Fenwick v. Laycock, 1 Gale, 27; Huffman v. Ackley, 34 Mo. 277; Rabsuhl v. Lack, 35 Mo. 316; Gardner v. Armstrong, 31 Mo. 536.) (*c*) The appellants are parties to the contract, and have acted under it. They cannot deny its validity. (Welland Canal Co. v. Hathaway, 8 Wend. 480; Horwitz v. Equit. Ins. Co., 40 Mo. 557; 1 Greenl. on Ev. § 207.) (*d*) The act of Congress of March 3, 1865, was not designed to cover a case like the one at bar. (Philpots v. Philpots, 1 J. Scott, 84.) Even under the act to invalidate the contract, there must have been "an intent to evade the provisions of the act." (U. S. Laws, 1864–5, p. 481; Vorebeck v. Roe, 50 Barb. 302.) The consideration and subject matter of the contract are both legal. (Wetherill v. Jones, 3 B. & Ad. 221.) The object of the national legislature was merely to inflict a penalty on the offending party for the benefit of the revenue. (Smith *et al.* v. Mawhood, 14 Mees. & W. 450; Brown v. Duncan, 10 B. & C. 93.) (*e*) The question is one of admissibility of evidence. The paper offered is not the contract, but evidence of the contract—evidence of the union of the minds of the parties. Shall the instrument be admitted? Can the respondent be prevented from proving a contract in itself moral and prohibited by no law? The power of Congress to "lay and collect taxes, duties, imports, and excises," cannot be extended by implication to that of prescribing rules of evidence for State courts. (Const. U. S., art. X of Amend'ts.)

II. The contract sued on did not create a partnership. (*a*) There is no communion of profits and losses in this case. The appellants agreed to indemnify the respondent against loss. They agreed to repay him all that he should advance. The contract may have contemplated the creation of a partnership, but it certainly did not create one. (*b*) But even if the contract did create a partnership, the respondent can still recover in this action. (Adams on Eq. p. 450, § 240 ; Parsons on Part. 276.)

BLISS, Judge, delivered the opinion of the court.

Suit was brought upon a contract between the parties, by which the plaintiff agreed to devote his time and advance the necessary funds until the profits should meet the expenses, for the manufacture and sale of a patent filter invented by defendants. He was to receive one-third of the net profits arising from the sale of the filters and the disposition of rights to the patents, and, after deducting all his advances, he was to pay to defendants two-thirds of the net proceeds of the business, and reserve to himself one-third, both to cover his interest and pay for his services. The defendants agreed to indemnify him from any losses that should occur in the business for the first four months, and pay him the amount of these losses upon his making an exhibit. The business was to be conducted on the cash system, in the name of the plaintiff ; and at the end of the year, if he did well, he was to receive a deed of one-third of the patent right ; but if he should withdraw from the business within the year, he was to be paid for his services. The agreement is long and inartificially drawn, but the above statement contains all that is necessary to understand the principles that should govern the case.

At the end of the four months the plaintiff made a statement of the business and gave it up, and this action is for advances made under the contract and for his services. The case was heard before a referee, who reported in favor of plaintiff, and judgment was rendered for $1,144, which was affirmed at general term, and the case is brought to this court by appeal.

Several questions were made below and brought here. The first is founded upon the fact that the agreement was not properly

stamped, the stamp having been affixed after the suit was brought. But no issue upon this point is raised by the pleadings. So far from defending on this ground, defendants expressly admit the contract, without alluding to its legality; and even if they raised the question, it was competent to show that the omission was not made "with intent to evade the provisions of the act" of Congress requiring the stamp. (See 15 U. S. Stat. at Large, 481, act of March 3, 1865; Beebe v. Hutton, 47 Barb. 188; Hitchcock v. Sawyer, 39 Verm. 412; Vorebeck v. Roe, 50 Barb. 302.)

A recovery is objected to in this action on the ground that the contract is one for a partnership, and, for that reason, that the petition should be in the nature of a bill in equity for the settlement of the partnership accounts.

Between partners an action at law will lie upon matters outside the partnership, or where the dispute is so disconnected with the general partnership accounts as not to involve their investigation and settlement. (Pars. on Part. 276; Ad. Eq. 239–40; Gilpin v. Enderly, 5 Barn. & Ald. 954.) But the contract as between the parties, while it provided for and contemplated a partnership, had not ripened into one when the plaintiff left. A partnership necessarily involves a community of profit. It is a contract for the mutual benefit of the parties. This community of profit includes a liability for losses, though the contract is the measure of that liability. The question has been often discussed whether, in order to constitute a partnership *inter se*, there must necessarily be a community of losses as well as profits. The older English cases regard a liability for losses, or rather an interest in the losses, as an essential ingredient of partnership as between the partners. The remarks of the court in Bond v. Pittard, 3 Mees. & W. 357, though there was no express decision upon the matter of partnership, implied that some interest in the losses was necessary. The case of Gilpin v. Enderly, 5 Barn. & Ald. 954, is referred to in the modern text-books as decisive of the question that one may be a partner with an express covenant against losses. This was an action somewhat similar to the one at bar. The plaintiff and defendant had entered into a contract as partners in the business of army clothiers for ten years, by which

Enderly (the plaintiff below) was to advance £20,000 of the capital stock, and was to receive absolutely out of the concern £2,000 per annum as his full share of the profits, and at the end of the partnership the full amount of his capital advanced. The action was against Gilpin upon the covenant, and the defense set up usury; that the partnership, as it involved no responsibility for loss, was but a corrupt and fraudulent cover for ten per cent. interest, when the law only gave five per cent., and therefore the covenant was null. Upon replication denying the corrupt or unlawful object of the covenant, the jury gave a verdict for plaintiff, and the case was brought to the King's Bench by error. The court sustained the verdict, though in calling the instrument a partnership contract its language is very peculiar. The hardship of the forfeiture of £20,000 for usury doubtless weighed upon both the court and jury; and, in delivering his opinion, the Chief Justice leaned upon, or rather threw the responsibility upon, the jury, who had found that the deed was not an usurious contrivance. He calls it a partnership "of a peculiar kind"—"of an unusual kind." The only thing authoritatively decided was that the deed was not an usurious one, though the reason might have been that it was a peculiar kind of partnership. The cases are very numerous in this country where this matter is discussed, and the general doctrine is that, in order to constitute general partnership as between the partners, there must be some kind of liability for the losses of the concern. Indeed, it is difficult to see how one can be a partner in, can participate in, the fortunes of a business, without being subject to those fortunes.

"To constitute a partnership between the parties themselves, there must be a communion of profit between them. A communion of profit implies a communion of loss, for every man who has a share of the profits of a trade ought also to bear his share of the loss." (Collier on Part., book 1, § 18.) Kent defines the contract in reference to its business to be one "to divide the profit and bear the loss in certain proportions." (3 Kent's Com. 24.) Story indorses the same liability for losses, while making "communion of profit" the essence of the contract. I do not find Parsons sustained in his remark, in the opening of chap. 5

Whitehill v. Shickle et al.

upon partnership, that "the weight of authority, as well as of reason, seems to be decidedly in favor of the rule that there may be a legal and valid partnership, although one or more of the partners are guaranteed by the others against loss." If he means that such persons may be partners as to those who trust them as such, he is right, and to these persons they are liable for the debts of the firm, notwithstanding the guarantee; but to hold them general partners as to those who have given them the guarantee is to overthrow all our ideas of the incidents of partnership. It must be one "of a peculiar kind," and some other term should be used in reference to it.

Mixed up with stipulations that could apply only to partnership contracts, there was, in that under consideration, an express provision to indemnify the plaintiff and pay him for all losses that should occur in the business during the first four months, with the proviso only that he should at the end of that time make a correct exhibit of the business; and in another part of the paper is an agreement to pay him the value of his services if he should leave. In reference to these provisions, the only reasonable construction I can put upon the contract is, that the joint liability was not to commence until the expiration of the four months; that the defendants were to take all the risk for that period, and from that period the parties might go forward as parties under the general provisions of the agreement. The defendants had confidence in their invention, and induced the plaintiff to take hold of it and bring it into market. With him it was an experiment, and without trial he would risk nothing. Even if plaintiff were deemed a partner, here was an express covenant to pay him his losses, or the amount of his advances less his receipts, as shown by the exhibit—for all the money put in was his—and let him retire. He has retired, and only seeks what they have agreed to pay him, and a full settlement of the partnership accounts is not at all necessary to ascertain their indebtedness. It is a matter simply of computation, without estimating stock debts and credits. The debt is due plaintiff, whether the stock on hand sells for little or more or does not sell at all, and whatever may become of the debts and credits. This case is unlike that of

Meyer v. Field, 37 Mo. 434, to which we are referred. That was an action at law against admitted partners for what plaintiff claimed would be due upon settlement of partnership accounts without seeking a legal settlement. This was an action upon an express contract to pay an agent or retiring partner, as defendants claim, a sum that can be ascertained without a settlement of the partnership accounts.

One of the points made by defendants is based upon an alleged violation of the agreement by the plaintiff in the manner of his conducting the business. This would have been a proper subject of counter claim if it had been charged upon him as a substantive claim, and specific damage alleged and proved. But we do not find what damage the defendants have suffered, or whether they have suffered any; and the only counter claim sought to be set up is for a $5,000 penalty named in the agreement, to which, as a penalty, they cannot be entitled; and in claiming this penalty they do not assign specific breaches, so as to advise him of the motive of their demand. A general statement that a party "totally disregarded all, and did not fulfill any, of the covenants and stipulations to be kept and performed, and made by him in the written instrument," etc., is altogether too general to support a demand, especially for a penalty.

The claim that plaintiff was bound to stay and settle up the business of the partnership after the four months had expired, so strenuously urged by defendants, is wholly inconsistent with his right to leave. It would have detained him in the business for months, and it does not appear that defendants desired that the business should be closed up. All the business and property went into their hands; and the plaintiff went out, as they agreed he might, and only asks what he invested in time and money.

The report of the referee was excepted to, and the foregoing opinion covers all the points made by the exceptions. Judgment affirmed. The other judges concur.