JOHN B. MORE, Appellant, *v.* H. L. CLYMER, Respondent.

March 28, 1882.

1. A failure to affix to an instrument of writing the revenue stamp required by the United States statute, does not avoid the instrument nor render it incompetent when offered in evidence in a state court.

2. A promissory note made in Illinois on Sunday, in consideration of money loaned on that day, is not, for that reason, void, under the statutes of that state, nor at common law.

APPEAL from the St. Louis Circuit Court, ADAMS, J. *Reversed and remanded.*

W. C. BRAGG, for the appellant: A failure to affix a revenue stamp does not avoid a written contract, nor render it incompetent when offered in evidence in a state court. — *Jacquin* v. *Warren,* 40 Ill. 459 ; *Latham* v. *Smith,* 45 Ill. 29 ; *Craig* v. *Dimock,* 47 Ill. 308 ; *Bunker* v. *Green,* 48 Ill. 243 ; *Express Co.* v. *Harris,* 48 Ill. 248 ; *Wilson* v. *McKenna,* 52 Ill. 43 ; *Carpenter* v. *Snelling,* 97 Mass. 452 ; *Griffin* v. *Ranney,* 35 Conn. 239 ; *Hunter* v. *Cobb,* 1 Bush, 239 ; *Whitehill* v. *Shickle,* 43 Mo. 537. A contract entered into on Sunday is not, for that reason, void. — *Bloom* v. *Richards,* 2 Ohio St. 237 ; Hurd's Stats. 396, sect. 261 ; *Sanders* v. *Johnson,* 29 Ga. 526 ; *Bosley* v. *McAllister,* 13 Ind. 565 ; *Perkins* v. *Jones,* 26 Ind. 499 ; *King* v. *Fleming,* 71 Ill. 21 ; *Banks* v. *Wertz,* 13 Ind. 565.

T. J. ROWE, for the respondent : A note, the considera-
tion for which has passed on Sunday, and which was made
and delivered on Sunday, is void. — *Grim* v. *Simes*, 61 Mo.
335 ; 30 Mo. 389 ; *Barnard* v. *Lopping*, 32 Mo. 341.   A
note not being stamped as required by law is not admissible
in evidence. — *Boly* v. *Lake*, 54 Mo. 201 ; *Boehne* v.
*Murphy*, 46 Mo. 57 ; *Whitehill* v. *Shickle*, 43 Mo. 537.
The contract was usurious, and appellant could only recover
the principal, $135. — Hurd's Stats. 1880, p. 635, sect. 6 ;
Underwood's Stats. 746, sect. 6 ; *McGill* v. *Ware*, 4 Scam.
21 ; *Goodrich* v. *Reynolds*, 31 Ill. 491 ; *Hammill* v. *Mason*,
51 Ill. 488 ; *Hefner* v. *Vandolah*, 62 Ill. 483.

LEWIS, P. J., delivered the opinion of the court.

This suit was commenced before a justice of the peace
on a promissory note for $150, executed by Jacob L.
Clymer and the defendant, as joint makers, and dated Janu-
ary 1, 1871.   The defendant appealed from the judgment
of the justice, and upon trial anew in the circuit court, the
note was excluded from evidence, whereupon the plaintiff
took a non-suit with leave, etc.   No revenue stamp was
affixed to the note, and it was executed and delivered on a
Sunday.

The question whether the failure to affix a revenue stamp
to a contract would void the instrument, or exclude it from
evidence in a state court by force of the acts of congress,
has never been directly passed upon in Missouri.   In
*Whitehill* v. *Shickle* (43 Mo. 537), it was held that the party
offering the contract might sustain it by showing that the
omission of the stamp was not because of any intent to
evade the law.   To like effect is *Boehne* v. *Murphy* (46
Mo. 57).   In *Boly* v. *Lake* (54 Mo. 201), it was held proper
to admit the instrument in evidence, after a proper revenue
stamp had been affixed and cancelled.   It can hardly be
claimed that these decisions affect, even inferentially, the
question here before us.   The court was not asked to say

whether the writing was primarily admissible or not, without a stamp. The party relying upon it was content to waive the question, and the court did not raise it for him. But there is abundant direct authority to the effect that the absence of a revenue stamp from a contract which the United States laws required to be stamped, could have no vitiating influence on the instrument before a state court. In *Craig* v. *Dimock* (47 Ill. 308), Breese, C. J., demonstrates unanswerably the following propositions : 1. While the congress has the power to require instruments created, and valid, under state laws, to be stamped, and has the consequent power to punish by fine any intentional evasion of the law in that regard, yet it has not the power to require such instruments to be stamped, as a prerequisite to their validity and binding force, or to their admissibility in evidence in the state courts. 2. Congress has power to prescribe rules of evidence, and specify what shall be instruments of evidence in the federal courts, but it belongs to the states exclusively to declare what shall be received in evidence in their own courts. 3. But, even under the provisions of the act of congress, it must be shown that the negligence to affix the stamp was wilful and fraudulent, with intent to evade its provisions before the penalty is incurred or the instrument required to be stamped is in any manner affected by the omission. 4. And, as that act does not, in terms, prescribe what shall be the rule of evidence in the state courts in respect to the stamping of instruments, it must be intended the provisions of the act, in that regard, were designed to apply only to the federal tribunals. These several propositions are amply sustained in the following cases : *Bunker* v. *Green*, 48 Ill. 243 ; *United States Express Co.* v. *Haines*, 48 Ill. 248 ; *Wilson* v. *McKenna*, 52 Ill. 43 ; *Griffin* v. *Ranney*, 35 Conn. 239 ; *Carpenter* v. *Snelling*, 97 Mass. 452 ; *Lynch* v. *Morse*, 97 Mass. 458, note ; *Hunter* v. *Cobb*, 1 Bush, 239. The bill of exceptions in the present case informs us that

the court " sustained the objections of defendant to the admission of the note offered by plaintiff, on the grounds that the same had no revenue stamp affixed," etc. We think that this was error.

Another ground on which the note was excluded by the court was, that it was executed and delivered on a Sunday. It was given in consideration of a loan of money made on the same day.

At common law, a contract made on Sunday was as good as if made on any other day. A legal invalidation on this ground, therefore, must arise from some statute in force in the place where the contract is made. The contract, in this case, was made in the state of Illinois, and it is properly insisted· that the law of that state must determine the question of its validity. The only Illinois statute bearing ·on the subject declares : " Whoever disturbs the peace and good order of society by labor (works of necessity and charity excepted), or by any amusement or diversion on Sunday, shall be fined not exceeding $25." Hurd's Rev. Stats. 396, sect. 261. Certain exceptions follow, which are not here pertinent. If the loan of money and the making of a promissory note therefor, are within this inhibition, the note must be void, since a contract which is forbidden by law can never be enforced. If not within it, the note is as valid as if made on a secular day.

We find no judicial settlement of this question among the Illinois decisions. The Missouri statute is very nearly to the same effect, but our supreme court has never determined whether or not its language applies to the making of a contract. In *Gwinn* v. *Simes* (61 Mo. 335), the court expressly reserved its judgment on that point and found that, even conceding the application of the statute, the note in that case was sufficiently ratified and validated by a subsequent mortgage given to secure it.

The English interpretations of the statutes on this subject, beginning with that of 27 Henry VI., chapter 5, afford us

no light. Those statutes are more comprehensive than that of Illinois, and the adjudications upon them are influenced, more or less, by the existing relations between church and state. In America there are some conflicting interpretations of the same statutory expressions ; but we think there is little difficulty in arriving at the manifest weight of authority and sound reasoning on the question before us.

In Massachusetts, Maine, and Michigan the statutory words are : " No person shall do any manner of labor, business, or work, except only works of necessity and charity, on the Lord's day." In New Hampshire, Vermont, Connecticut, Pennsylvania, Alabama, and Kentucky, the prohibitions are variously expressed, but in all of them the word " business " is used to indicate a thing forbidden. In these states it is judicially held that contracts made on Sunday are void, unless within some statutory exception. Thus, in *Pattee* v. *Greely* (13 Metc. 284), Chief Justice Shaw said : " The statement of facts admits that there is nothing to show that the execution of this bond was a work of necessity or charity. Was its execution ' any manner of labor, *business*, or work,' within the meaning of the statute? Certainly it was. The legislature intended to prohibit secular business on the Lord's day, and did not confine the prohibition to manual *labor*, but extended it to the making of bargains, and all kinds of trafficking." This simple reasoning, with its unavoidable application of the term *business*, forms the basis of adjudication in the other states above mentioned, where the same word appears in their statutes, and where their courts hold that contracts made on Sunday are void. *Hilton* v. *Houghton*, 35 Me. 143 ; *Adams* v. *Hamell*, 2 Doug. 73 ; *Allen* v. *Deming*, 14 N. H. 133 ; *Adams* v. *Gay*, 19 Vt. 358 ; *Wight* v. *Geer*, 1 Root, 474 ; *Johnston* v. *The Commonwealth*, 22 Pa. St. 102 ; *Rainey* v. *Capps*, 22 Ala. 288 ; *Slade* v. *Arnold*, 14 B. Mon. 287.

A very different statutory prohibition is found in some

of the other states, including Illinois and Missouri. In Ohio, the statute provides, that "if any person shall be found, on the first day of the week, commonly called Sunday, at *common labor*, works of necessity and charity only excepted, he shall be fined," etc. In *Bloom* v. *Richards* (2 Ohio St. 387), the broad distinction between such a statute and one which includes *business*, or its equivalent, among the forbidden occupations of the christian sabbath, is ably and clearly explained by Judge Thurman. After an exhaustive review of the decisions, English and American, he says : "It thus seems to be the common expression of the courts that the making of a contract is *business*, within the meaning of these acts. At least this is the word, and not *work* or *labor*, usually employed to define the transaction. * * * Now, by nothing short of the most strained and unreasonable construction, could the mere making of a contract be brought within either of the aforegoing definitions [of labor]. * * * A. meets B. and says to him, 'I will give you $50 for your horse.' B. replies, 'Agreed.' Here is a contract, made in ten seconds, and in ten words — but where is there any *labor?* * * * Now, if by a prohibition of *labor*, all *business* is prohibited, how is it that the latter word is found in every one of the numerous statutes I have quoted, with the single exception of our own? Could there be clearer evidence that the words 'work' and 'labor,' one or both of which are found in each of these acts, save that of Pennsylvania, were not, in the opinion of the law-makers, synonymous with, or so comprehensive as, the word 'business,' and that, consequently, this last word was employed to embrace what the two former did not include? And, when it is remembered that, neither in their strict sense, nor popular signification, are the words 'work' and 'labor' appropriate to describe the mere making of a contract, can it reasonably be doubted that it is the word 'business' in these several laws, by which it was intended to embrace

contracts, and which has had the effect to prohibit them?" The court decided that the contract in question, which was for the sale of land, was " not, by reason of its execution and delivery on a Sunday, invalid." In New York, the statute provides that there " shall not be any servile laboring or working on the first day of the week, called Sunday, excepting works of necessity or charity; " and " no person shall expose to sale any wares, merchandise, fruit, herbs, goods, or chattels, on Sunday, except meats, milk, and fish, which may be sold at any time before nine of the clock in the morning." Under these provisions it is held that any contract which has for its consideration the doing of ordinary work or labor on Sunday, or which involves the exposure to sale of any wares, etc., is void. *Watts* v. *Van Ness*, 1 Hill, 76 ; *Palmer* v. *City*, 2 Sandf. 318. But contracts which are not liable to either of these objections may be made on Sunday as well as any other day. In *Boynton* v. *Page* (13 Wend. 425), it was held that the prohibition against exposing to sale on Sunday, etc., extends only to the public exposure of commodities to sale in the streets or stores, etc., and has no reference to mere private contracts made without violating or tending to violate the public order and solemnity of the day. The contract for a private transfer of personal property, made on Sunday, was therefore held valid. In California, the statutory prohibition is against keeping open on Sunday " any store, workshop, bar, saloon, banking-house, or other place of business, for the purpose of transacting business," etc. In *Moore* v. *Murdock* (26 Cal. 514), it was held that the prohibition did not cover the making of contracts, and that a contract for the sale of sheep, made on Sunday, was valid.

The only adjudications we find which seem to run counter to the foregoing, are two in Indiana, where the statute is precisely like that of Ohio. These decisions fail to carry with them even persuasive authority. In one, *Link* v. *Clemmens* (7 Blackf. 479), the conclusion is simply an-

nounced, without any reasoning, that "the executing of this bond comes within the terms 'common labor,' and is a violation of the statute." In the other, *Reynolds* v. *Stevenson* (4 Ind. 619), a similar conclusion is reached, upon authority solely of *Link* v. *Clemmens*, just mentioned, and the Michigan and New Hampshire decisions above noted; wholly ignoring the fact that these derive all their force from the word "business," which nowhere appears in the Indiana statute.

It thus appears, that the weight of authoritative interpretation would unquestionably hold that the word "labor," in the Illinois statute, has no reference to the making of a promissory note, or other contract, unless, perhaps, the consideration be some work or labor to be performed on a Sunday. But there are other considerations worthy of attention. What the statute forbids is that any one shall "disturb the peace and good order of society, by labor," on a Sunday. It is inconceivable that the making of the loan or of the promissory note, in this instance, although on Sunday, could have disturbed the peace and good order of society. It surely could not disturb the peace of the consenting parties to the transaction, and we have no right to assume that any other persons were cognizant of it. Further: The Illinois and Missouri statutes are, in a measure, modelled after the English statutes and those of the older states of the union. These ancient laws had for centuries forbidden, not merely manual labor, but also "business," "secular employments," "ordinary vocations," and their equivalents, on the sabbath day. Why, in framing a new law, did the legislators leave out all such expressions, and confine their prohibition to "labor" only, on Sunday? Manifestly, because they wished to change the law from what it had been. The adjudications were before them, in which the prohibition against making contracts was discerned in the use of the word "business," or its synonym, and not in the word "labor," or any equiv-

alent. They omitted all expressions which might thus include the making of contracts, and retained that only which made actual manual labor, as intended in the popular signification of the word, a thing to be abstained from on the christian sabbath.

In this country, the legislative power, since the formation of our federal government, has never extended to the enforcement of religious duties, merely because they are religious. The rules of human conduct prescribed by the Christian religion find no vindication in the civil authority, except in so far as they have become visibly incorporated in our constitutions and laws. To these constitutions and laws, then, and not to any mere sentiment of piety, however commendable, must we look for the means and measures whereby the courts are required to preserve the good order and well being of society. It may be sinful to make loans and promissory notes on Sunday. But if we do not find the acts clearly forbidden by the laws which we are authorized to enforce, we must leave the sin to be dealt with by a Higher Power. We do not find such acts forbidden by the statute law of Illinois, and are, therefore, of opinion that the court below erred in excluding from evidence, on that ground, the note here sued on.

As to the defence of usury, the record does not show any finding of fact, or any instruction given on that issue, or any issue formally made. We held, in *Wickersham* **v.** *Jarvis* (2 Mo. App. 279), that, under such circumstances, "it is perfectly immaterial, as affecting the plaintiff's right to recover the full amount due on the note, and costs, what the evidence may show as to the amount of interest paid or agreed to be paid." The question is not properly before us.

The judgment is reversed and the cause remanded. The other judges concur.