ROBERTS, *Appellant*, v. BARNES *et al.*

Division One, March 12, 1895.

1. **Deed of Trust:** SUNDAY: STATUTE. A deed of trust executed on Sunday is not for that reason invalid under Revised Statutes, 1889, section 3852, prohibiting the performance of work and labor on that day.

2. ———: FRAUDULENT CONVEYANCE. A conveyance by an insolvent to an administrator to secure to the estate a disputed debt on a secret agreement that a part of the proceeds shall be turned over to the grantor by the administrator, who was also a distributee of the estate, is invalid as against other creditors of the grantor.

*Appeal from Boone Circuit Court.*—HON. JOHN A. HOCKADAY, Judge.

REVERSED AND REMANDED.

*Turner, Hinton & Turner* for appellant.

(1) The deed of trust, assailed and sought to be set aside by plaintiff's bill in this case, should have been declared void by the court below, because the same was executed, acknowledged, certified and delivered, contrary to, and in violation of, the law of this state, on the first day of the week, "commonly called Sunday." Jones, Mortgages, 623; *Barret v. Tel. Co.*, 39 Mo. App. 611; *Thompson v. Tel. Co.*, 32 Mo. App. 191; *Bernard v. Lupping*, 32 Mo. 341; *Gwinn v. Simes*, 61 Mo. 335; *Rogers v. Tel. Co.*, 78 Ind. 169; *Tel. Co. v. Yapst*, 118 Ind. 248; *State v. Seeler*, 33 Me. 339; *Huson v.*

*Foley*, 110 Mass. 392. (2) The deed of trust was made in fraud of the grantor's creditors. 1 Jones on Mortgages, sec. 627; *McNickel v. Rechter*, 13 Mo. App. 515; *Cordes v. Straszer*, 8 Mo. App. 61; *Burgert v. Borchert*, 59 Mo. 80; Wait on Fraudulent Conveyances, p. 328, sec. 272; *Holmes v. Braidwood*, 82 Mo. 610. (3) If there was fraudulent intent and collusion between the parties, the *bona fides* of the debt secured thereby does not validate the deed. See authorities *supra*, and also Bump's Fraudulent Conveyances [3 Ed.] 582; *Shelly v. Booth*, 73 Mo. 74; *Albert v. Besel*, 88 Mo. 154; *Fredericks v. Algier*, 88 Mo. 598; *Siegers' Sons v. Thomas*, 107 Mo. 635; *State ex rel v. Hope*, 102 Mo. 410; *Alberger v. White*, 117 Mo. 347; *Works Co. v. Machine Co.*, 118 Mo. 365. (4) A deed is absolutely void if made in whole or in part to use of grantor. See authorities *supra*, and also *Donovan v. Demming*, 69 Mo. 436; *Gaff v. Stiver*, 12 Mo. App. 115; *Rice v. Cunningham*, 116 Mass. 469; *Lukins v. Aird*, 6 Wall. (U. S.) 78; *Robinson v. Stewart*, 10 N. Y. 189; *Schmidt v. Opie*, 33 N. J Eq. 138; *Hautze v. Brady*, 34 N. J. Eq. 562; *Crowningshield v. Keltridge*, 7 Metcalf (Mass.) 520.

*Wellington Gordon* for respondent.

(1) The appellate courts of this state have uniformly held, in the construction of this statute, that contracts made on Sunday are not void, as they are not prohibited by this statute. The broad distinction between the above statutes and the statutes of other states, where the courts have held to the contrary doctrine, is in the use of the word "*business*," which is not embraced in this section of our statute. *Kaufman v. Hamm*, 30 Mo. 388; *Glover v. Cheatham*, 19 Mo. 656; *More v. Clymer*, 12 Mo. App. 14; *Guinn v. Simes*, 61 Mo. 335; *Bloom v. Richards*, 2 Ohio St. 388; *Merritt v. Earle*, 29 N. Y.

115; *Boynton v. Page* 13 Wend. 229; *Johnson v. Brown,* 13 Kan. 530. (2) This deed of trust was binding between the parties, although the court may hold the acknowledgment is void. *Keene v. Schnedler,* 92 Mo. 516; *Rood v. Renfroe,* 58 Mo. 265. (3) The deed of trust was executed and delivered in January and the judgment rendered against Barnes *et al.* in February, 1891, following. A judgment creditor is not a purchaser for value, and an unrecorded deed holds against all parties, except purchasers for value without actual notice. *Davis v. Owenly,* 14 Mo. 133; *Maupin v. Emmons,* 47 Mo. 306; *Black v. Gregg,* 58 Mo. 566. (4) The acknowledgment taken by the justice of the peace, to this deed of trust, though taken on Sunday, is legal and valid. Taking an acknowledgment to a deed, is a ministerial, and not a judicial act, and is not prohibited by section 3260, Revised Statutes, 1889, which applies alone to judicial acts, and prohibits courts from transacting "business" on Sunday. *State v. Green,* 37 Mo. 466; *Wertheimer v. Howard,* 30 Mo. 420; *Stone v. Graves,* 8 Mo. 151. (5) The evidence in this cause shows clearly that the deed of trust is not void as to the creditors of Thomas J. Barnes. The four notes secured were *bona fide* debts, due from Barnes to Bratton as administrator of the estate of William Bratton, deceased, and there is no evidence in this case showing to the contrary. There is no collusion between Bratton and T. J. Barnes for the purpose of securing an indebtededness which did not exist, or a part of which was fictitious and fraudulent, as there was in the cases cited as authority by appellant's counsel. *Cordes v. Straszer,* 8 Mo. App. 61; *State ex rel v. Hope,* 102 Mo. 429; *McNichols v. Rubleman,* 13 Mo. App. 515; *Alberger v. White,* 117 Mo. 347.

BRACE, P. J.—This is an action in equity by the plaintiff, assignee of a judgment against the defendant Thomas J. Barnes, to set aside a deed of trust executed by the said Barnes and wife, dated the seventeenth day of January, 1891, and certified to have been acknowledged by them on that day by Josiah Hall, J. P., whereby the said Barnes and wife conveyed, subject to a prior deed of trust for $4,500, to defendant W. A. Gooding, a tract of land containing three hundred and twenty acres in Boone county, in trust to secure the payment of four promissory notes, amounting, principal and interest, to about the sum of $3,500, payable to Wm. Bratton, late of that county, deceased, and of whose estate the defendant James W. Bratton was then administrator, on the ground that the deed was executed and acknowledged on Sunday; was made for the purpose of defrauding the creditors of the said Barnes; and in secret trust for his benefit. The court, upon the hearing, found for the defendants and dismissed the bill; and the plaintiff appeals.

At the time of the execution of the deed of trust in question, the said Barnes was insolvent, and being pressed by his creditors. The notes secured thereby were found among the assets of William Bratton, deceased, by his son, and administrator, James W. Bratton.

Barnes' first wife was a daughter of William Bratton, deceased, and his children by her were distributees of that estate. Tillman Kemper married another daughter of the said William Bratton and he was thus interested in the estate. Kemper, who was introduced as a witness in behalf of the defendant, testified in substance as follows:

"I had a conversation with Thomas J. Barnes about the execution of this deed of trust the Saturday

night before the instrument was drawn.  I had been
trying for some time to get him to do something about
this deed of trust.  He claimed that he had paid a por-
tion of the amount due on these notes which he owed
the estate, but had no evidence of the fact.  I told him
he ought to secure the notes, and we talked the matter
all over that Saturday night at his house.  And the
next morning he came to me and said: 'I believe I
will give a deed of trust covering the whole thing.'  I
told him that was what he ought to do; that he would
pay his individual debts and that his. children would
get a benefit of it.  And I told him if he paid these
other debts, it would go where neither his people nor
his children would get any good of it.  James Bratton
came to Barnes' house the next morning.  I think he
was sent for.  I told him in the house, in the presence
of Barnes, that Barnes had agreed to give the deed of
trust covering all the notes.  Then Barnes had his son
Alfred there, and they went out into the yard and had
another conversation, but I do not know what was said
between them.''

Thomas J. Barnes, who was introduced as a witness
by the plaintiff, testified:  That on Sunday morning,
January 18, 1891, Tillman Kemper and James W.
Bratton were at his house urging him to give a deed of
trust on his farm to secure some notes (the same de-
scribed in the deed of trust), which they claimed wit-
ness owed the estate of William Bratton, deceased; but
that witness claimed that he had paid all but one note
and refused to give any deed of trust whatever at first;
but that he finally agreed to do so on certain conditions;
that these conditions were that when the deed of trust
was closed out by sale of the land Bratton should col-
lect and refund to witness all the proceeds of sale over
and above the amount necessary to pay the note which
he admitted to be due, which at that time, with interest,

amounted to about $1,100. It was also agreed that Bratton should have Judge Hall to draw up a paper showing that he would carry out the conditions; that witness' son, A. M. Barnes, came out to witness' house about the time the agreement was made between witness, Bratton and Kemper, and heard the conditions stated; that, pursuant to the arrangements thus made, the parties then went to Hallsville and saw Judge Hall about drawing up the deed of trust; that it was then arranged that witness should return home and bring his wife to A. M. Barnes' house in Hallsville that same Sunday afternoon to execute the deed of trust; that, in accordance with this arrangement, witness and his wife met Bratton and Hall at A. M. Barnes' about 4 o'clock Sunday afternoon, and that on this occasion the whole agreement about the deed of trust and the conditions upon which it was to be given were stated to Judge Hall, who objected to drawing the deed and taking the acknowledgment on Sunday on the ground that it would not be legal; but that finally upon being urged by witness and Bratton, Hall consented to write the deed and take the acknowledgment that afternoon, and to date the certificate and deed back to Saturday, the seventeenth, so that no one would ever know anything about it; that it was agreed on all hands to keep the matter a secret. Tillman Kemper was not present when the deed was drawn up and executed. While the deed was being drawn up, or just afterwards, it was arranged for witness and Bratton to call at Hall's office in a day or so and get him to draw up a paper showing that Bratton was to collect the full amount of the deed of trust and then pay back to witness all over and above the $1,100 note; that this paper was never drawn up, however, because witness and Bratton thought it best not to do so; that they did not want to make the matter public.

A. M. Barnes, son of Thomas J. by his first wife, being introduced as a witness, by the plaintiff, testified: That on Sunday morning, January 18, he rode out to his father's house and there found his father, Tillman Kemper and James W. Bratton; that his father desired him to witness an agreement between himself and Bratton about giving a deed of trust on his farm; that Thomas J. Barnes then stated that he would repeat the agreement between them, which was that Barnes should give a deed of trust on his farm to Bratton covering the notes held by Bratton as administrator of William Bratton, deceased, against Barnes; and that when the land was sold under the deed of trust Bratton should pay back to Barnes all the proceeds of sale over and above one note, which would give Barnes about $2,000 to start on again, as Kemper and Bratton said. Bratton agreed to these conditions and said he would give Barnes an instrument in writing binding him to carry them out; that on that same Sunday afternoon witness again met Thomas J. Barnes and wife and James W. Bratton and also Judge Hall at witness' residence in Hallsville; that on that occasion Judge Hall drew up the deed of trust in question; Thomas J. Barnes and wife executed it and Judge Hall took their acknowledgment; that this was all done on Sunday afternoon, January 18, 1891; that when the deed of trust was finished it was left with Judge Hall for him to fill out a blank about a former deed of trust to Gatewood.

Josiah Hall, the justice, was introduced as a witness by the plaintiff, who testified: That he had on Sunday, the eighteenth day of January, 1891, at the residence of A. M. Barnes, in Hallsville, at the instance of T. J. Barnes and J. W. Bratton, drawn up the deed; and that Barnes and wife signed and acknowledged the same before him as justice of the peace on that

day; and that he had written out his certificate of acknowledgment at the same time and place; that when the deed of trust was drawn up, executed and acknowledged, James W. Bratton and Thomas J. Barnes, were present, and A. M. Barnes, who was the son of Thomas J. Barnes, was present, part of the time; that these were all who were present, except that Mrs. Ellen Barnes, Thomas Barnes' wife, was called in to sign and acknowledge the deed. The notes embraced in the deed were handed witness by J. W. Bratton, and each was fully described in the body of the deed. Barnes claimed that he only owed one of the notes—one of the larger ones, which at the time amounted to about $1,100; he claimed to have paid off the other notes in William Bratton's lifetime. It was understood between the parties then present that Barnes should give Bratton a deed of trust on his land embracing all the notes, and that when the land was sold under the deed of trust Bratton should pay back to Barnes all the land should sell for over and above enough to pay the $1,100 note, which he admitted that he still owed. The witness further states that Tillman Kemper had, earlier in the day of Sunday, the eighteenth, called at his house and requested him to go to A. M. Barnes' house that afternoon and draw up this deed; that he objected to doing this justice work on Sunday and insisted that it would not be legal if done; but that both Barnes and Kemper, and afterwards Bratton, insisted that witness should proceed that afternoon to draw up and take the acknowledgment to the deed; that he could date the deed and his certificate back to the seventeenth (Saturday), and nobody would ever know the difference; and that it was insisted by Barnes and Bratton that all should keep it secret.

Witness did, as urged by the parties, date the

deed and certificate back to Saturday, the seventeenth day of January, 1891. When signed and acknowledged, the deed of trust was left with witness with the understanding that he should on the following day, Monday, January 19, 1891, take it to Columbia, and, after inserting in a blank left for that purpose the description of the deed of trust theretofore given, he was to file it for record in the recorder's office, all of which witness did. Witness further stated that while drawing up the deed, or just afterward, at A. M. Barnes' house T. J. Barnes and J. W. Bratton had some conversation about getting witness to draw up a paper between them showing the conditions upon which Barnes had agreed to give the deed of trust. As a matter of fact, however, they never came to witness to have this paper written; why, the witness did not know.

Defendant James W. Bratton testified in his own behalf, in substance, as follows: "The first interview I ever had with T. J. Barnes in regard to giving me this deed of trust was in his house on Sunday morning, January 18, 1891. Mr. Tillman Kemper was present at this talk we had in his house. I don't know whether Kemper was present when we finally talked the matter over, near his well in his yard, or not. A. M. Barnes was present at this conversation. Thomas J. Barnes was suspicious of me, for some reason, and had his son present to hear what was said between us and he repeated over the conversation we had in the house. Thomas J. Barnes told me in this conversation that he would give me the deed of trust to secure the notes, if I would give him as much as he claimed he had paid on them. I told him I did not know whether he had paid those other notes or not, or anything about that. He then said he would give me the deed of trust if I would give him my proportional part of the notes he claimed to

have paid that I might get out of the estate. I was an heir and had a fifth interest in the estate. I told him whatever amount I received from the estate on account of the notes he claimed to have paid from the sale of his land, under the deed of trust I would give him my part of it if he would give me the deed of trust, and he said he would do it.   *   *   *   The only proposition I made Barnes was, that I would give him my part of this debt, that might be paid by me out of these notes he claimed to have paid.   *   *   *   I went to A. M. Barnes' house that evening where Hall drew up the deed of trust. I do not know who brought Hall there. He was at Barnes' house when I arrived there, and Hall and Thomas J. Barnes came to the house a little while after I had been there. I had no conversation with either of them about the conditions upon which the deed of trust was to be executed. Not a word was said about it at A. M. Barnes' house. Hall was but a little while drawing up the deed of trust. I gave him the notes and he went on to draw up the deed of trust. I don't know who told Hall about the notes I wanted to secure, but I presume Barnes told him. I laid the notes on the table. I had talked the matter over with Barnes that morning and had no further talk with him in regard to the matter.''

The foregoing extracts from the evidence present the salient features of the case.

I.   That the deed of trust was executed on Sunday is beyond question. Is it void for that reason? Plaintiff contends that it is, because by statute it is provided that: "Every person who shall either labor himself, or compel or permit his apprentice or servant, or any person under his charge or control, to labor or perform any work, other than the household offices of daily necessity, or other works of necessity or charity,   *   *   *   on the first day of the week, commonly called Sunday,

shall be deemed guilty of a misdemeanor." R. S. 1889, sec. 3852. And in support of this contention we are cited to 1 Jones on Mortgages, section 623, and several cases from other states, maintaining the proposition that "statutes forbidding the transaction of business on Sunday have the effect to render void all contracts executed upon that day."

But these authorities are not in point under our statute, which contains no such comprehensive provision, and the inhibitions of which are limited to work and labor, hunting game and shooting, in the section cited; to horse racing, cock-fighting and playing at cards or any games, in section 3854; and to exposing for sale any goods, wares or merchandise; keeping open any ale or porter house, grocery or tippling shop, and retailing any fermented or distilled liquor on Sunday, in section 3855. While contracts growing out of a violation of these provisions of the statute are void and will not be enforced by the courts (*Bernard v. Lupping*, 32 Mo. 341), other business contracts are left by our statute as they were at common law, and as the common law makes no distinction between Sunday and any other day, as to the making of contracts, and all other acts, not of a judicial nature, it is not seen upon what principle a note or deed, executed on Sunday, could for that reason alone be held void; and so it has been ruled in this state, that a promissory note executed on Sunday is not, for that reason, void. *Kaufman v. Hamm*, 30 Mo. 387; *More v. Clymer*, 12 Mo. App. 11; *Glover v. Cheatham*, 19 Mo. App. 656.

And elsewhere, under statutes similar to ours, it has been held that contracts made on Sunday in matters of business, other than such as is prohibited by statute, are valid. *Bloom v. Richards*, 2 Ohio St. 387; *Boynton v. Page*, 13 Wend. 425; *Johnson v. Brown*, 13 Kan. 529; *Horacek v. Keebler*, 5 Neb. 355; *Hellams*

*v. Abbercombie*, 15 S. C. 110; *Moore v. Murdock*, 26 Cal. 514.

The cases in which contrary rulings have been made will be found in the main to be under statutes which prohibit generally the transaction of any secular business on Sunday, except works of necessity or charity; but such is not the scope of our statute, nor of the statutes of many of the states. It was not necessary to pass upon this question in *Gwinn v. Simes*, 61 Mo. 335, and the fact that the judgment of the court upon the subject was reserved in that case ought not to impair the force of the authorities cited.

The fact that the acknowledgment was taken on Sunday neither impairs nor strengthens the integrity of the instrument. Acknowledgment is for the purpose of registration, and registration, to impart notice. No question of notice or priority of lien is involved in this issue. It follows from what has been said that the deed of trust can not be held to be void because executed and acknowledged on Sunday.

II. This brings us to the main question, which is one of fact to be determined by the testimony, and for that purpose it does not seem necessary that the weight of the evidence should be ascertained, for the reason that from all the evidence it is manifest that either one or the other of two propositions must be true; that in this deed of trust, given to secure a debt which in whole or in part was due and owing from Thomas J. Barnes to the estate, there was concealed a trust for his benefit, either in the amount of all the proceeds that might be realized from a sale of the land over and above the note, amounting in principal and interest to about the sum of $1,100, as testified to by Thomas J. and Alfred M. Barnes, and Squire Hall, or in so much of that amount as might be the share of James W. Bratton, as distributee of the estate, as testified to by

him—and, whichever story be credited, it is equally manifest that this secret trust was willfully and knowingly created by the grantor and beneficiary, for the purpose of concealing from the creditors of the grantor a portion of the debtor's property, and ultimately depriving them of any benefits to be derived therefrom, under cover of a conveyance to secure a *bona fide* indebtedness.    Such a contrivance was a fraud upon the creditors of Thomas J. Barnes, whether he was thereby to secure $2,000 or $3,000 according to the one agreement testified to, or only $500 or $600, according to the other agreement testified to, and it was the common fraud of both parties to the deed, for which the deed of trust should have been set aside.    The judgment is reversed and the cause remanded.    All concur.