## WALKLIN v. HORSWILL, Sheriff.

A sale of personal property by the pledgee or mortgagee, after default, not at public sale and on public notice, as required by Civ. Code, § 2123, is a conversion of the property, which, under section 2038, extinguishes the lien of the mortgage or pledge.

A mortgage, though in the form of a bill of sale, is within Civ. Code, § 2091, requiring, at delivery of a chattel mortgage, that the mortgagee deliver a copy thereof to the mortgagor, and section 2092, prohibiting the register of deeds from receiving or filing a chattel mortgage not reciting, over signature of the mortgagor, receipt by him of such copy, for omission of which receipt the mortgage is declared void, and for omission of which the filing is a nullity.

A bill of sale intended as an absolute transfer of title, but with a secret agreement by which the grantor reserved an interest in the goods, it being agreed that the grantee, after selling enough goods to pay the grantor's indebtedness to him, should turn back to the grantor the remainder or their proceeds, was fraudulent as to creditors, and void.

Civ. Code, § 2371, providing that the question of fraudulent intent is one of fact and not of law, does not prevent direction of a verdict, where, on the fact undisputed or admitted, independently of the question of actual fraudulent intent, the instrument, on which the rights of the parties depends, being either a pledge, chattel mortgage, or absolute conveyance of title, with a secret reservation of interest, is void, or its lien has been destroyed by the act of the party to whom it was given.

(Opinion filed, Nov. 3, 1909.)

Appeal from Circuit Court, Hamlin County. Hon. GEORGE H. MARQUIS, Judge.

Action by William Walklin against James Horswill, Sheriff of Hamlin County. Judgment for defendant. Plaintiff appeals. Affirmed.

*John Jenkins* and *M. J. Russell,* for appellant.   *W. N. Skinner* and *Hall, Lawrence & Roddle,* for respondent.

WHITING, J.  This is an action in claim and delivery, which was brought to recover the possession of a lot of merchandise held by defendant as sheriff under and by virtue of certain warrants of attachments issued in actions brought against the brother of the plaintiff.  The plaintiff claimed in this complaint that he was entitled to the possession of the property by virtue of a purported bill of sale of same given to him by his brother, John Walklin, which said purported bill of sale plaintiff alleged was given solely as security.  Plaintiff further alleged that these goods were wrongfully taken from his possession.  The defendant in his answer alleged that John Walklin was still the owner of said property, and that the purported bill of sale was executed for the purpose of hindering, delaying, and defrauding the creditors of said John Walklin, which wrongful purpose was known to the plaintiff at the time he received such bill of sale.  The cause was tried to a jury, and, when the evidence was all in, upon motion of the defendant, the learned circuit court directed a verdict in favor of the defendant, and such a verdict was returned by the jury.  A judgment having been entered thereon, and a motion for a new trial having been denied, the plaintiff brought this appeal from said judgment and order denying a new trial.

The only question before us is whether or not the trial court was warranted in directing the verdict.  In order to sustain such ruling of the court, it being not a determination of a question of fact, but purely a decision of a question of law, it must be found that, interpreting the evidence in this case as favorably to the appellant as possible, it still leaves facts established against the plaintiff and appellant, under which facts, as a matter of law, the defendant was entitled to recover.  Bank v. Stebbins, 15 S. D. 280, 89 N. W. 674; Bohl v. Dell Rapids, 15 S. D. 619, 91 N. W. 315.  The appellant strenuously urges that, under the evidence and issues in this case, there was a question of fraudulent intent in connection with the execution and delivery of the purported bill of sale, which question the trial court was bound

to submit to the jury; appellant contending that such question of fraudulent intent was purely a question of fact and not of law.

Keeping in mind the rule above stated, that the evidence herein must be construed as favorably as possible to the plaintiff, we find the following facts to be established: John Walklin, brother of plaintiff, was engaged in the mercantile and also in the real estate business. Prior to October 21, 1905, he had become indebted to the plaintiff for money loaned to him evidenced by two certain prommissory notes, and on said date there remained uppaid about $4,000, which sum was long past due, and plaintiff had been endeavoring to collect same. At that time John Walklin was also indebted to one Frank J. Reed in the sum of $2,000, which indebtedness was known to the plaintiff herein. On said date John Walklin was also indebted to one Geo. W. Parliament in the sum of some $700, which sum was past due. Just prior to October 21, 1905, John Walklin was closing a trade of some land for a stock of goods in another state, which goods were en route to the home of the Walklins on said October 21st. John Walklin returned from closing said trade for goods prior to October 19, 1905, and upon his return the plaintiff demanded that he be given a bill of sale of the personal property owned by John Walklin. A bill of sale absolute in its terms was given by John Walklin to the plaintiff, which was delivered October 21, 1905; the consideration therein named being $4,000 in hand paid, and the property covered thereby being the stock of general merchandise then in the possession of John Walklin at Castlewood, also the stock just traded for, which was at that time en route billed to the said John Walklin, as well as a certain dwelling house located on some farm land, all the hay belonging to said John Walklin on two quarter sections of land, all the grain belonging to John Walklin raised on a certain quarter of land, a lot of silver watches, and some other items of personal property. It appears, from oral testimony of the plaintiff, that the property named in said bill of sale comprised all the personal property of the said John Walklin. The bill of sale was filed in the office of the register of deeds on October 25, 1905. Plaintiff swears: That

on October 21, 1905, he took possession of all the goods then at Castlewood; that he took possession of the other goods upon their arrival, paying all charges against the same; that he contracted for the help employed in selling of said goods; and that from that time and until November 1st he had the possession of the goods, and was selling the same at retail, applying the net proceeds, after payment of expenses, upon the indebtedness evidenced by the notes, which he held against his brother, and which he claims was not paid but merely secured by such purported bill of sale. On November 1st the defendant, as sheriff, under and by virtue of two warrants of attachment issued in actions brought by said Reed and Parliament against John Walklin to recover on their claims above mentioned, levied upon and seized, as the property of John Walklin, all of the merchandise remaining un- sold, both that in the possession of John Walklin when the purported bill of sale was given, as well as that then en route. On November 2d, after such seizure, the plaintiff served upon the defendant a notice or demand for the goods levied upon, which notice contained the following: "And you are further notified That I, William Walklin, the undersigned, claim ownership of the above-described propery, absolutely and completely. That I acquired ownership therein and the possession thereof under and by virtue of a bill of sale made and entered into on the 21st day of October, 1905, and filed with register of deeds of Hamlin county, S. D.., on the 25th day of October, 1905, and that said bill of sale is so on file, and notice to all, and said bill of sale from John Walklin to myself, which sells to me the above-described goods, wares, and merchandise, and that I claim ownership complete, and the right to possession of the above-described goods, wares, and merchandise." Attached to this notice was a sworn affidavit of plaintiff to the effect that he had read the notice and knew its contents, and that the statements therein contained were correct and true, and upon the trial he swore that he knew the facts stated in said notice at the time he swore to same. Plaintiff testified that he took a bill of sale, rather than a mortgage, because he wanted immediate possession of the goods and thought he could not take said possession under a mortgage, that said

bill of sale was taken merely as security, and that when he had sold enough of the property to pay his claim and expenses the balance and any proceeds thereof in his hands were to be returned to his brother. The evidence offered by the plaintiff would show the merchandise to have been worth, all told, not less than $6,600. There is no evidence as to the value of the other property described in the purported bill of sale. Plaintiff further testified that, during the time that he was in possession of the goods, he knew that he had possession of them for the debt; that he was the owner until paid, but not absolute owner.

The appellant contends: That the evidence shows that the possession of this property was surrendered to him as security; that the whole arrangement created a pledge of this property; that if, under the evidence, it should appear that possession was not given him of the property, but that it remained in the possession of his brother, then the transaction would amount to a mortgage; and further that, even admitting that the transaction was a bill of sale conveying title to him, yet it was not the province of the court to pass upon the question of fraudulent intent in executing the same; but that the intent should have been left to be determined by the jury, under the provision of section 2371 of the Civil Code, reading as follows: "In all cases arising under section 991, or under the provisions of this title, except as otherwise provided in sections 2369, the question of fraudulent intent is one of fact and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for a valuable consideration." Respondent, meeting these several contentions of the appellant, says: That, considering this transaction as either a pledge or mortgage, the evidence of the appellant himself shows such a conversion of these goods as to destroy the lien of such pledge or mortgage and leave the goods free therefrom; that, considering this transaction as a mortgage, it is an absolute nullity, for the reason that there was no recitation therein showing that the mortgagor received a copy; that if this transaction is neither a mortgage nor pledge, but an absolute transfer of the title, then that it is void as against creditors, owing to a secret trust under which the grantor reserved an in-

terest in such goods inconsistent with the idea of an absolute transfer; and respondent contends that, the fact of this secret trust being admitted, there was no question of fact to submit to a jury, and the court was authorized to direct a verdict.

We are of the opinion that the respondent is correct in each of these positions. The plaintiff apparently did not know what position to take upon trial; but, under the pleadings, he could only recover upon the theory that the transaction was either a mortgage or pledge, yet the question of fraudulent intent was raised by respondent on motion to direct verdict. Appellant admits the fact that the indebtedness was long past due when this transaction took place, and that he proceeded to sell the goods and apply the proceeds to the indebtedness. Under our statute relating to chattel mortgages, there is provided a method for foreclosing such mortgages other than that by action. This statute provides for a notice of sale and a sale at public auction. Section 20;8 of our Civil Code provides that the wrongful conversion of personal propery upon which there is a lien, by the person holding the lien, extinguishes such lien. Our statutes, furthermore, by section 2123 of the Civil Code, provide that, in case of sale of pledged property for the payment of the indebtedness secured, such sale must be made upon public notice. In the case of Everett v. Buchanan, 2 Dak. 249, 6 N. W. 439, 8 N. W. 31, the territorial court, in a decision which has been followed since the date thereof, held that a sale of property by the pledgee or mortgagee, after default in obligation secured, which sale was not made in accordance with the provisions of the statute, was a conversion of the property pledged such as, under the statute, destroyed the lien of such mortgage or pledge. We see no reason to depart from this holding.

Treating this transaction as a mortgage—and a reading of appellant's brief indicates that they rely mainly upon such theory—we are confronted with certain other statutory provisions. While it is true that at common law a chattel mortgage need not be in writing, either in whole or in part, yet under the provisions of our statute it is clear that it must be in writing; that is, all of the contract containing the covenants and agreements on the

part of the mortgagor, though no particular form of words is necessary. The mortgage may be in form an absolute bill of sale, and under the express provisions of our statute parol proof is admissible to show that it was given as security. Under the provisions of the statute, unless possession was taken before rights of creditors attached, a mortgage must be filed in the proper office in order to be valid against creditors. Kimball Co. v. Kirby, 4 S. D. 152, 55 N. W. 1110. In this case, while it does not appear that this paper was filed as a mortgage and so indexed, we will presume either that it was, or that possession had actually been taken thereunder previous to the attachments. We have, however, other sections. Section 2091 of the Civil Code, as follows: "Every mortgagee of a chattel mortgage shall at the time of its delivery make and deliver to the mortgagor a full, true and complete copy of such mortgage." And section 2092 of such Code providing: "No register of deeds shall receive or file any chattel mortgage which does not contain a receipt, over the signature of the mortgagor, to the effect that a copy of such mortgage has been received by him; and every chattel mortgage not containing such receipt shall be null and void." From these sections we see that the filing of this instrument, even if filed as a mortgage, was an absolute nullity, and further that, even if the necessity of filing was avoided by taking of actual possession, yet the instrument was null and void as a mortgage, owing to the fact that such a receipt did not appear in said instrument; it being true that no such receipt was contained therein, or annexed thereto.

This court held, in the case of Park et al. v. Robinson et al., 15 S. D. 551, 91 N. W. 344, that the omission of the receipt, showing that mortgagor had received a copy of the mortgage, renders such mortgage void as against attachment creditors. It might, however, be claimed that this instrument, being in form a bill of sale. is not subject to the provisions of these statutes; that they are intended to apply only to those instruments showing, upon their face, that they are chattel mortgages. We think, however, such contention would be without merit. The authorities all agree that no particular wording is necessary to create a mortgage.

Whether an instrument is a mortgage or not does not depend upon its wording, but does depend upon the real intent and contract of the parties. If the instrument was given as security, then, as between the parties, when executed, it was a mortgage, and, no matter what form of wording they saw fit to use, they cannot avoid the effect of the provisions of the statutes relating to mortgages. Any other holding would open the way to the very frauds sought to be prevented by sections 2091 and 2092, supra. This court will take judicial notice that these sections were intended to prevent the mortgagee fraudulently inserting into a mortgage description of property not intended to be conveyed. It will readily be seen that in an absolute transfer of personal property, or in case of a pledge, where, in either case, possession of the property is given to the grantee or pledgee, no reason exists for such a receipt; but it exists, in case of a mortgage, just as much if the mortgage is in form as absolute conveyance, as when in the usual mortgage form. It is true that this court, in Kennedy v. Hull, 14 S. D. 234, 85 N. W. 223, declared that a lease of a store building, containing a provision whereby the lessor was to have a lien upon the lessee's goods therein, did not necessarily have to show on its face that the lessee received a copy of the lease; but the court based its holding upon the fact that, in case of a lease, from the very nature of the transaction the lessee would get a copy of the lease, and the reason for the law would not apply thereto.

We know of no other state having sections like sections 2091 and 2092, supra, and it is therefore impossible to find any case in the books exactly parallel with the case at bar; but numerous decisions are to be found wherein similar propositions are involved, showing clearly by analogy that, regardless of the form of the instrument, the receipt must be contained therein or attached thereto. In the case of Dowdell et al. v. Empire Furniture & Lumber Co., 84 Ala. 316, 4 South. 31, a party delivered to another goods, taking in return promissory note with an oral agreement that title of the goods should remain in the first party until the notes were paid. The vendee was empowered to sell the goods, and, if sold, to turn over any notes received as security.

If any of the original goods remained unpaid after notes were due, the first party could take back the unsold goods and credit their invoice price on the notes. The court held this contract to be a mortgage, and, under a statute providing that mortgages are not valid unless in writing, held this contract void and that it gave the first party no lien on the goods as a mortgage. In Michigan, one section of their statute (Comp. Laws. 1871, § 4706) provides that a chattel mortgage is absolutely void unless filed or there is a change of possession of the property. Another section (section 4703) provides that, under the same circumstances, a conveyance of personal property is only presumptively void. In the case of Cooper v. Brock, 41 Mich. 488, 2 N. W. 660, the court held that an instrument, in form a bill of sale, but given as security, was a mortgage and, as such, subject to the provisions of the first section above mentioned, and the court said: "The mere fact that an instrument does not contain terms of defeasance cannot be at all decisive in determining the question whether it shall be considered a mortgage or not. If from the entire instrument, either standing alone or read in light of the surrounding circumstances, it appears to have been given as security, it must be construed as a mortgage, and the law will apply thereto the laws applicable to mortgages." Preston v. Southwick, 42 Hun 291; Nicklin v. Betz Spring Co., 11 Or. 416, 5 Pac. 51, 50 Am. Rep. 477. This last case cites the following from Jones on Chattel Mortgages, § 275: "A bill of sale, absolute upon its face but executed as a security and intended to operate as a mortgage, is within the operation of a statute making void a mortgage, not recorded, in case the property be not delivered to and retained by the mortgagee." In analogy, it certainly must be held that a bill of sale in form executed as security, if intended to be a mortgage, is void if a copy be not furnished to mortgagor.

If this transfer was not intended as a pledge or mortgage, but was intended as, and was therefore, an absolute transfer of the title, then there is no escape from the fact that the grantor in such instrument had with the grantee a secret agreement, by which the grantor reserved an interest in the said goods; it being admitted by the grantee that, after enough goods had been sold to

pay him his indebtedness due from his brother, he was to turn back to his brother the remainder of the goods or their proceeds. We are therefore not met with the condition found in many of the authorities such as found in Merchants' State Bank v. Tufts, 14 N. D. 238, 103 N. W. 760, 116 Am. St. Rep. 682, a North Dakota case cited by appellant, wherein that court held that, under the facts in that case, there was no secret trust, and that therefore the case was not controlled by the decision in Newell v. Wagness, another North Dakota case, found in 1 N. D. 62, 44 N. W. 1014; but the case at bar comes directly under the holding in Newell v. Wagness, supra, wherein it was held that a secret trust rendered the apparently absolute conveyance void as to creditors. In that case the court said: "The district court found as a conclusion of law that the 'contract of December 6, 1888, between Lee and the plaintiff, was fraudulent in law and void as to creditors of Lee.' We hold that this conclusion was sound and could not have been otherwise upon the findings and upon the conceded facts of the case. Such transfer of property, as that disclosed by the evidence and findings, is of a character which on grounds of public policy the law denounces as constructively fraudulent and void as to creditors. The question of the existence or nonexistence of an actual purpose to defraud creditors does not enter as an essential factor in disposing of the question presented in the records, and we shall therefore, in this opinion, not find it necessary to enter upon that aspect of the case. The transfer of the property in question presents a case of 'constructive fraud,' sometimes calling 'legal fraud.'"

In McCulloch v. Hutchinson, 7 Watts 434, 32 Am. Dec. 776, and which case is a leading authority on the question before us, the court said: "A preference may be given by a debtor, though insolvent, to an honest creditor. A sale may be made by such debtor at a specified price; but honesty and fair dealing require that the truth of the transaction should concur with its appearances, that the whole truth should be developed, and that the transaction should not wear the aspect of a simple sale or preference, and yet in fact be merely a disguise or color, by means of which the debtor is enabled to enjoy a secret interest in and

control over the goods and their proceeds, of which other credi-
tors are not informed by the proceeding itself. It is thus said by
Tilghman, C. J.: "There is no intimation on the face of the deed
of the reservation of any part for the benefit of the debtor. There-
fore, if there was any such reservation, it was secret; at least,
it was not disclosed in such manner that the other creditors could
come to the knowledge of it by inspection of the writing. In
what a situation then are they placed? If one of them lays an
execution on the hides, the deed is produced by which they are
protected; and yet the debtor by this private agreement is entitled
to part of them. What is this but a collusion between the debtor
and a preferred creditor to protect the property of the debtor,
from the execution of other creditors? It falls directly within
the words and spirit of the statute of 13 Elizabeth' Passmore v.
Eldridge, 12 Serg. & R. 201. In the present instance the debtors
were insolvent, and other creditors had obtained judgment against
them, when, by an agreement with the plaintiffs, the debtors made
an absolute bill of sale in writing of their store of goods to the
plaintiffs to the value of $504.99, purporting to be in consideration
of $350, and delivered them possession; but all this was accom-
panied with a private verbal understanding that the plaintiffs
were to hold them, not as their own, but in order to carry on the
store and dispose of the goods, and first pay themselves the
amount of the debt due to them, then amounting to but $280,
after receipt of which the balance was to be paid over to the
debtors. It was while the goods were thus held under the assign-
ment that the plaintiffs in the judgment issued their execution
and sold the goods, on the ground that the conveyance was in law
fraudulent and void, and we are of opinion that the fact proved
in the case, and which is uncontroverted, of the existence of this
private arrangement, renders the transaction a fraud per se; that
it is a conveyance to the end, purpose, and intent to hinder and
prevent creditors within the words and meaning of the statute of
Elizabeth; and that there was no error in the court below charg-
ing the jury to that effect." We would also cite Roberts v.
Barnes, 127 Mo. 405, 30 S. W. 113, 48 Am. St. Rep. 640.

It will be seen that the above authorities held that, where it

is admitted that there is a secret trust, in such case the instrument is void at law. It must therefore follow that it was unnecessary for the court to submit to the jury the question of fraudulent intent. The appellant contends that under section 2371, supra, such question of intent should have been submitted to the jury. It must be conceded that, if in this case there was a transfer of title and also of possession, the facts do not bring the case under section 2369, being the exception named in said section 2371, and it must be conceded that the facts would bring the case under section 2368 of the Civil Code, reading as follows: "Every transfer of property or charge thereon made, every obligation incurred, and every judicial proceeding taken with intent to delay or defraud any creditor. or other person of his demands, is void against all creditors of the debtor, and their successors in interest, and against any persons upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor." It will be seen that this section provides that such transfer must be with intent to delay or defraud, etc. It is for this reason that appellant says that the question of intent should have been submitted to the jury. In the recent case of Hall v. Feeney, 22 S. D. 541, 118 N. W. 1038, 21 L. R. A. (N. S.) 513, this court, considering said sections 2368 and 2371, supra, after referring to the facts in the case, which showed a transfer with a secret trust reserved in favor of the creditor, said: "It is quite clear therefore that this transaction or pretended sale was void as against the creditors of James Hall, in that it was evidently made with the intent to delay, if not to defraud, his creditors." And further: "Whereas, in the case at bar, both counsel virtually agreed that the facts were undisputed, the court may, as a matter of law, declare the legal effects of such undisputed facts by directing a verdict." It therefore follows that where, taking the facts most favorable for the plaintiff, it yet appears that legally he cannot recover, the court may direct a verdict against him the same as if there was no dispute as to the facts. In the case of Chenery v. Palmer, 6 Cal. 119, 65 Am. Dec. 493, which case involved many of the questions found herein, the court said: "If the bill of sale was, by a private understanding between the parties, to operate as a mortgage, then

it was a secret trust to the extent of the surplus over the debt secured for the benefit of the vendor, and void by the eleventh section of the same statute (referring to the statute of frauds). * * * Wherever there is no dispute as to the facts, and the law upon those facts declares a transaction fraudulent and void, it is not a question for the jury. The court, in such case, may direct the jury how to find, or set aside the verdict if they find the contrary."

It will therefore be seen that, whether we view this transaction as a pledge, mortgage, or an absolute conveyance, yet, in either case, under the facts undisputed or admitted by the appellant, the transaction was void as a matter of law, or else that the lien of plaintiff had been destroyed by his own act, and that therefore there was no question to submit to the jury, and the court rightly directed a verdict in favor of the defendant.

The judgment of the trial court and the order denying a new trial are affirmed.