MUSTAR, Appellant, v. McCOMB et al., Respondents.

(164 N. W. 975.)

(File No. 4141.   Opinion filed November 12, 1917.   Rehearing granted December 31, 1917.)

1.   **Fraudulent Conveyances—Knowledge of Intended Fraud—Direct Evidence of Fraud, Whether Necessary.**
     Direct evidence tending to establish fraudulent character of a conveyance is not essential; since fraud and knowledge of intended fraud may be shown by circumstantial evidence.

2.   **Same—Debtor's Conveyance to Brother Business Associate, Effect.**
     The fact that grantor and grantee are brothers and business associates is not in itself evidence of fraud, nor of intention to defraud others; it is simply a circumstance that may cast suspicion upon the transaction, a suspicion removable by evidence showing the transaction was otherwise bona fide.   Held, further, that a sale to a relative is not fraudulent unless it would be fraudulent for other reasons and in absence of such relationship. ·

3.   **Same—Conveyance of all Debtor's Property, Whether Fraudulent re Creditors.**
     Conceding that the property described in a debtor's deed to his brother, a creditor, was all of the debtor's property, this would not prove, nor tend to prove the transaction fraudulent; since, if grantor actually owed grantee an amount equal in value to grantor's interest in the incumbered land conveyed, he had a right to convey the property in payment of such debt.

4.   **Same—Grantee's Knowledge of Grantor's Insolvency, Whether Material—Other Creditors' Status, Immateriality.**
     The fact that grantee may have known that grantor was

insolvent at time of the conveyance complained of by other creditors, is wholly immaterial; as is the fact that grantee knew that if he accepted the property so conveyed in payment of his debt, there would be nothing left to pay debts of other creditors.

5. **Same—Relative Value of Debtor's Conveyed Property and Grantee's Claim.**

Where the undisputed evidence showed that grantor owed grantee at least $8,000 and that the land conveyed was mortgaged for $6,400, the land not being worth more than $35 per acre, at which valuation it would amount to $11,000, such conveyance was not fraudulent as to other creditors.

6. **Same—Insolvent Debtor, Right of to Prefer Creditors.**

A debtor, although hopelessly insolvent, may prefer one créditor to another, and assign all his property to such creditor in payment of his debt; construing Civ. Code, Sec. 2366. Held, further, that a creditor has a right to accept from his debtor enough of debtor's property or money to pay his debt, even though he knows there will be nothing left debtor with which to pay other creditors; and although this will necessarily hinder and delay said creditors in collection of their debts, and may prevent their being collected at all, this does not render the conveyance fraudulent.

7. **Same—Intent to Defraud, Pending Creditor's Suit As Affecting Intent.**

The fact that one of the creditors had sued on a claim against debtor shortly prior to execution of debtor's deed given in payment to another creditor, sheds no light upon the question whether such conveyance was fraudulent; no judgment having been entered; the commencement of suit neither constituted a lien upon the property nor prevented its sale.

8. **Same—Expressed Consideration, Whether Fictitious—Measure of Credit Through Incumbered Land Conveyance.**

Where the expressed consideration in a debtor's deed to his creditor in payment of his debt was $11,000, the land being worth $35. per acre, at which price it would be worth the expressed consideration, and was mortgaged for $6,400, the debt being $8,000, such expressed consideration is not fictitious; the creditor having refused to allow more than $30. per acre, but it being finally agreed that debtor should be credited with the amount for which the property should be sold, it having been sold for $35. per acre; and debtor was entitled to credit at the latter price.

9. **Same—Creditor's Purchase of Sheriff's Sale Certificate, Whether Evidence of Creditor's Fraud.**

The fact that a creditor, who had previously received from debtor a deed conveying debtor's realty in payment of his debt,

purchased a sheriff's certificate of sale under execution upon a judgment in favor of another creditor, and later took a sheriff's deed to the property, it being part of the property so previously conveyed, is not evidence of a fraudulent intent on the part of such grantee; that he was under no obligation to resist the levy of said execution, or redeem from the sheriff's sale; when execution was levied he could adopt one of three courses—resist levy and sale; permit sale to be made, then redeem; or take an assignment of said sheriff's certificate.

10. **Same—Debtor's Absolute Conveyance to Creditor, Effect on Other Creditors—No Secret Trust.**

So long as a debtor conveys the absolute title to his property to a given creditor, without any secret trust or reservation of benefits to himself, a court is without power to grant relief, and may not interfere in favor of other creditors who are thereby excluded from reaching debtor's said property. Walklin v. Horswill, 24 S. D. 191, 123 N. W. 688, distinguished.

Gates, P. J., dissenting.

Appeal from Circuit Court, Spink County. Hon. ALVA E. TAYLOR, Judge.

Action by Z. P. Mustar, against Edwin McComb and H. H. Hanson, as sheriff of Spink county, South Dakota, to determine ownership of certain land. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals. Reversed.

*Sterling & Clark,* for Appellant.

*Morris & Moriarty,* for Respondents.

(2) To point two of the opinion, Respondents cited: Burt v. Timmons (W. Va.) 2 S. E. 780; Bump, Fraudulent Conveyances, 96.

(3) To point three of the opinion, Respondents cited: 20 Cyc. 449, and cases there cited.

(4) To point four of the opinion, Appellant cited: 20 Cyc. pp. 474-5.

(5) To point five of the opinion, Appellant cited: 20 Cyc. p. 469.

POLLEY, J. This action was brought to determine the ownership of a half section of land in Spink county. Prior to the transactions involved in this case the land was owned by one G. H. Brown. He executed a deed conveying the land to his brother, W. H. Brown, who in turn sold it to the plaintiff. The deed in question was executed on the 27th day of September,

A. D. 1913. It contained an error in the description of the land intended to be conveyed, and a second deed was executed on the 9th day of March, A. D. 1914, for the purpose of correcting the mistake made in the first. The defendant McComb, an execution creditor of G. H. Brown, claiming the deed from G. H. Brown to W. H. Brown to be void as against the creditors of G. H. Brown, caused an execution issued on a judgment against the said G. H. Brown to be levied on said land. Defendant Hanson is the sheriff who made such levy. The plaintiff, Muster, as grantee of W. H. Brown, brings this action to set aside the levy of said execution.

At the close of the trial, the trial court found, among other facts, that the conveyances of the land by G. H. Brown to W. H. Brown were made—

"without any agreement as to a definite price or consideration and were made for the fraudulent purpose and with the fraudulent intent to thereby defeat the collection of claims of the creditors of Giles H. Brown, including the claim of Edwin McComb, and that said deeds were accepted by the said Walter H. Brown with knowledge on his part of the said fraudulent intent, and with the intention on his part to assist the said Giles H. Brown in the effort to defraud the creditors of the said Giles H. Brown, including the defendant McComb."

Pursuant to such findings of fact and conclusions of law based thereon, judgment was entered declaring said deed to be null and void, and directing the defendant Hanson to proceed with his levy and sale of the land. From this judgment, and an order denying a new trial, plaintiff appeals.

[1] There is no direct evidence establishing the fraudulent character of the conveyance from G. H. Brown to W. H. Brown, nor is such evidence essential. Fraud and knowledge of intended fraud may be shown by circumstantial evidence. Cole v. Reiley, 35 S. D. 30, 150 N. W. 299. But, before taking up the circumstances upon which defendants base their claim that the conveyance in question is fraudulent, it will be necessary to glance at the material facts in the case:

[2] G. H. and W. H. Brown are brothers. They had been associated in the banking business. As the result of certain advances that had been made by W. H. Brown because of bad

loans made by said banks, G. H. Brown had become largely indebted to his brother, W. H. Brown. This indebtedness he was unable to pay, and it was decided that he should transfer to his brother, W. H. Brown, the half section of land that is the subject of this controversy. At the time this conveyance was decided upon, some talk was had between them as to the value of the land. G. H. Brown asked $35 per acre for the land, while his brother valued it at only $30 per acre. But it was finally agreed that the land should be conveyed to W. H. Brown, and that he would credit the amount for which it could be sold, less the amount of certain incumbrances upon it, on G. H. Brown's indebtedness to him. This indebtedness amounted to more than the value of G. H. Brown's equity in the land, even at $35 per acre. Shortly after this understanding, G. H. Brown executed the deed in question and sent it to his brother. The deed was executed on the 27th day of September, 1913, but, because of the error in the description of the land conveyed, a second deed was executed on the 16th day of April, 1914, but bearing the same date as the first, for the purpose of correcting the error in the first. The consideration expressed in these deeds was $11,000. Shortly prior to the execution of the first deed, but after the agreement to execute the same had been made, one Roberts, a creditors of G. H. Brown, commenced suit to recover on a claim against him. In this suit, judgment was taken by default, execution issued thereon, and the property was levied upon and sold by the sheriff. W. H. Brown purchased the sheriff's certificate of sale, and later took a sheriff's deed thereon. W. H. Brown took possession of the premises immediately after the transfer of title, and thereafter in every way treated such premises as his own. He collected the rent for the years 1914-15, without any accounting or agreement to account to his brother for the same. It is not contended that $30 per acre was not a fair valuation of the land at that time.

The circumstances relied upon by defendant to show that the conveyance was fraudulent are: That the grantor and the grantee are brothers and business associates; that the conveyance was of all the grantor's property; that the conveyance was made pending a suit against the grantor; that the consideration expressed in the deed was fictitious; that the grantee took a sheriff's

deed to the land; and, finally, that the grantee had notice of all the material facts involved.

[3] The fact that the grantor and the grantee are brothers and business associates is not, of itself, evidence of fraud, nor of intention to defraud others. It is a circumstance that may cast suspicion upon the transaction, but it is a suspicion that may be removed by evidence that shows that the transaction was otherwise bona fide. Shea v. Hynes, 89 Minn. 423, 95 N. W. 214. In Bump on Fraudulent Conveyances (4th Ed.) § 67, it is said:

"Relationship is not a badge of fraud. Fraud, however, is generally accompanied with a secret trust; and hence the debtor must usually select a person in whom he can repose a secret confidence. The sentiments of affection commonly generate this confidence, and often prompt relatives to provide for each other at the expense of just creditors. Consequently relatives are the persons with whom a secret trust is likely to exist. The same principle applies to all persons with whom the debtor has confidential relations. Any relation which gives rise to confidence, though not a badge of fraud, strengthens the presumption that may arise from other circumstances, and serves to elucidate, explain, or give color to the transaction. * * *"

But a sale to a relative is not fraudulent, unless it would have been fraudulent for other reasons, and in the absence of such relationship.

[4-6] It is by no means clear from the evidence that the deeds in question conveyed all of the grantor's property. There is no finding to that effect by the trial court, and there is evidence in the record tending to prove that the grantor owned considerable other real property at that time. But, conceding that the property described in said deeds was all the property owned at that time by the grantor, this would not prove, nor tend to prove, the transaction to be fraudulent. If the grantor actually owed the grantee an amount equal in value to the grantor's interest in the land, then he had a right to convey the propery in payment of such debt. The fact that the grantee may have known that the grantor was insolvent is wholly immaterial. It is likewise immaterial that the grantee knew that, if he accepted the property described in the deeds in payment of his debt, there would be nothing left with which to pay the debts of the other creditors.

It is not disputed that the grantor owed the grantee at least $8,000, and the undisputed evidence shows that the land was mortgaged for $6,400. It is not contended that the land was worth more than $35 per acre. At this valuation it would amount to $11,000, and, after deducting $6,400, the amount of the mortgage, there would be but $4,800, to apply on the $8,000 due the grantee. A debtor although he may be hopelessly insolvent, may prefer one creditor to another, and assign all his property to such creditor in payment of his debt. Section 2366, Civ. Code; Sandwich Mfg. Co. v. Max, 5 S. D. 125, 58 N. W. 14, 24 L. R. A. 524; Jewett v. Downs, 6 S. D. 319, 60 N. W. 76; Sprague v. Ryan, 11 S. D. 57, 75 N. W. 390; Gardner v. Haines, 19 S. D. 519, 104 N. W. 244. And a creditor has a right to accept from his debtor enough of his debtor's property or money to pay his debt, even though he knows that there will be nothing left the debtor with which to pay his other creditors. This will necessarily hinder and delay other creditors in the collection of their debts, and may prevent their being collected at all; but this does not render the conveyance fraudulent.

[7] The fact that one of the creditors had commenced an action on a claim against the debtor, a short time prior to the execution of the first deed, is urged as showing an intent to defraud, but we are unable to see how this fact sheds any light on the transaction. No judgment had been entered, and the commencement of the action neither constituted a lien upon the property nor in any wise prevented its sale.

[8] It is claimed that the consideration expressed in the deed is fictitious, and that this fact tends to show the fraudulent intent of the grantor. We are unable to find anything suspicious in this fact. In the first place, the expressed consideration is not fictitious. The property was transferred to W. H. Brown by G. H. Brown for the purpose of making payment on the debt owed to W. H. Brown by G. H. Brown. G. H. Brown wanted to be credited at the rate of $35 per acre, while W. H. Brown refused to allow more than $30; but it was finally agreed that G. H. Brown should be credited with the amount for which the property should be sold, and, the property having been sold for $35 per acre, this is the amount for which he is entitled to credit.

[9] The action that was pending against G. H. Brown at

the time the first deed was executed was prosecuted to final judgment, and, pursuant to execution issued thereon, the property conveyed by said deed was sold at sheriff's sale. W. H. Brown took an assignment of the sheriff's certificate of sale, and, later on, took a sheriff's deed to the property. Respondents contend that this is evidence of a fraudulent intent on the part of W. H. Brown; that, under such circumstances, a bona fide purchaser would have resisted the levy or redeemed from the sale. He was under no obligation to do either. When the execution was levied, he was at liberty to adopt either one of three courses: He could resist the levy and sale, he could permit the sale to be made and redeem, or he could take an assignment of the sheriff's certificate of sale, if the holder thereof were willing to assign. He adopted the latter course. The amount of the judgment was not large, and he may have concluded it could cause less trouble and expense for him to purchase the sheriff's certificate of sale than to redeem or attempt to resist the sale; but it is immaterial what his reasons were, so long as he kept within his legal rights.

[10] The case presents no difficult or unusual features. We have a debtor in failing circumstances; he has not sufficient property or means from which to pay all his creditors; he makes a preference of one creditor, and turns over all his property to this creditor, to be applied on his debt to him. The other creditors are dissatisfied; but, so long as the law permits a failing debtor to prefer and pay one creditor to the exclusion of the others, and so long as he conveys the absolute title, without any secret trust or reservation of benefits of any kind to himself, the court is without power to grant relief, and has no right to interfere. Respondents' answer is framed on the theory that the debtor reserved a secret trust or beneficial interest in the property. His argument in his printed brief is based largely upon the theory that G. H. Brown was not in fact indebted to W. H. Brown. The evidence does not support either theory.

Respondent cites Walklin v. Horswill, 24 S. D. 191, 123 N. W. 668, and relies upon what is said by this court in that case in support of the determination of the trial court in this case; but the facts in the two cases are not analogous. In that case the grantor executed a bill of sale purporting to convey the absolute title to the property involved to a creditor. The value

of the property conveyed was greatly in excess of the amount of the indebtedness, and an understanding was entered into by the grantor and the grantee, who were brothers, whereby the grantee was to sell certain merchandise described in the bill of sale, until a sufficient amount had been received therefor to pay his debt and expenses, when he was to return to the grantor the property remaining and any surplus from the proceeds of such property as had been sold. Because of this understanding it was held that the conveyance was · fraudulent as to the other creditors of the grantor. In this case no such facts were disclosed. The value of the grantor's interest in the property conveyed did not exceed, nor equal, the amount of the indebtedness. There was no understanding, secret or otherwise, whereby any part of the property, nor the proceeds from the sale thereof, was to be returned to the grantor. This brings the case within the rule followed by the North Dakota court in Bank v. Tufts, 14 N. D. 238, 103 N. W. 760, 116 Am. St. Rep. 682, and referred to by this court in Walklin v. Horswill, supra. ·

There being no evidence in the record to support the findings of the trial court that the conveyance was fraudulent or made for the purpose of hindering, delaying, or defrauding the creditors of G. H. Brown, the judgment and order appealed from are reversed.

GATES, P. J. (dissenting). In view of the inability of W. H. Brown to make a satisfactory accounting of the paper taken over by him, I am not convinced that the claimed indebtedness of G. H. Brown to him was proven. I therefore think the majority opinion is wrong, because it is based on the assertion that there was bona fide debt to W. H. Brown in excess of the value of G. H. Brown's equity in the land.